## UNITED STATES *v.* BALDRIDGE and others.

*(Circuit Court, N. D. Alabama.* April Term, 1882.)

1. CRIMINAL LAW—NEGLECT OF DUTY—UNAUTHORIZED ACTS.

For an officer, under Rev. St. § 5515, to neglect to perform a duty or violate a duty imposed by law is one thing, and to do unauthorized acts with intent to affect the election, or the result thereof, is another thing, and is made a distinct and separate offence by the statute.

2. SAME—INTENT.

In case of neglect or refusal to perform a duty, or the violation of a duty, it is an offence under the statute without being coupled with the intent specified in this section; but unauthorized acts, which may in themselves be innocent if coupled with the intent to affect the election, are made by this section criminal acts.

3. SAME—INTENT ESSENTIAL TO CRIME.

When the proof shows that an unlawful act was done, the law presumes the intent, and proof of the act being a violation of law is proof of the intent.

4. FALSE CERTIFCATE OF ELECTION—WHAT MUST BE SHOWN.

In an indictment against officers of election for fraudulently making a false certificate of the result of the election, it must be shown that the ballot-box had been opened and tampered with, and false ballots substituted for true ballots.

5. OFFICERS—OBLIGATIONS.

An officer is bound to use that care and diligence in the discharge of his duties that a conscientious and prudent man, acting under a just sense of his obligations, would exercise under the circumstances of a particular case; and if he fails and neglects to do so he is culpable.

6. STATUTE CONSTRUED.

Where the statute prescribes that the inspectors of election, *immediately* upon the closing of the polls, shall count out the votes so polled, its object manifestly is that there should be no unnecessary delay; that upon the closing of the polls the next thing to be done is the counting out of the votes; and that no other business shall intervene to occupy and distract the attention of the officers in charge until the matter in hand shall be consummated.

Violation of United States Election Laws.

*W. H. Smith,* U. S. Dist. Atty., *L. W. Day,* and *Paul L. Jones,* for the prosecution.

*L. P. Walker, P. H. Humes, John D. Branden,* and *Lawrence Cressor Coleman,* for defendants.

BRUCE, D. J., *(charging jury.)* The defendants are indicted under section 5515 of the Revised Statutes of the United States, which has reference to crimes against the elective franchise:

" Section 5515. Every officer of an election at which any representative or delegate in congress is voted for, whether such officer of election be appointed or created by or under any law or authority of the United States, or by or under any state, territorial, district, or municipal law or authority, who neg-

lects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state or territory thereof; or who violates any duty so imposed; or who knowingly does any acts thereby unauthorized, with intent to effect any such election, or the result thereof; or who fraudulently makes any false certificate of the result of any such election in regard to such representative or delegate; or who withholds, conceals, or destroys any certificate of record so required by law respecting the election of any such representative or delegate; or who neglects or refuses to make and return such certificate as required by law; or who aids, counsels, procures, or advises any voter, person, or officer to do any act by this or any of the preceding sections made a crime, or to omit to do any duty, the omission of which is by this or any of said sections made a crime, or attempts to do so, — shall be punished as prescribed in section 5510."

It is to be observed that the statute is made applicable to officers of elections, and to no other persons; and was manifestly intended to secure from them the faithful performance of their duties as such officers of election.

A number of offences are included in the statute, and the word "intent" is used but once in the entire section, and in relation to one only of the offences described therein.

The first offence is where an officer "neglects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state or territory thereof." The next is where an officer violates any duty so imposed; and the next is "where an officer knowingly does any act thereby unauthorized with intent to affect any such election, or the result thereof. The next is where an officer fraudulently makes any false certificate of the result of such election. * * *" And then follows a description of a number of other offences denounced by the statute.

I do not understand the proposition to be that the phrase "with intent to affect the election, or the result thereof," is to be held as applying to every offence described in the section; and yet if it applies to any one except the one in which it appears as a part of the description of the particular offence, it is difficult to see why it does not apply to each and all of them; so that the violation of a duty imposed by doing some illegal thing, or the making of a false certificate of the result of an election, would not be an offence under the statute unless it were done with intent to affect the election or the result thereof.

To neglect to perform a duty, or to violate a duty imposed by law, is one thing, and to do unauthorized acts with intent to affect the election or the result thereof is another thing, and is made a distinct and separate offence by the statute.

The unauthorized acts which, when done with intent to affect the election or the result thereof, may be of indifferent legal quality, may be innocent in themselves, but when coupled with an intent to affect the election, or the result thereof, the offence is made out which is described in the statute. But the neglect or refusal to perform a duty under the law, or the violation of a duty imposed by law; the making of a false certificate, or the withholding or destruction of a certificate required by law to be made,—are all offences under this statute, without being coupled with an intent to affect the election or the result thereof. The reason of this doubtless is that these latter acts which I have mentioned are in themselves violations of the law, and the law makes the doing of them by officers of election an offence against it, whether coupled with corrupt motives or not. If this view of the statute be correct, then what ground is there for saying that officers of election are not liable under it unless these acts were done with corrupt intent, or intent to affect the election or the result thereof, except in the case mentioned in the statute? If a state legislature or congress saw fit to do so they might by law make judges even of courts of record liable for mistakes made by them in the discharge of their official duties. The wisdom of such a measure every one would question, but the power to do it must be admitted; and so it is that congress has enacted this section 5515 of the Revised Statutes of the United States, and made it, as before stated, for officers of election, and for them alone; and it is a vain thing to say that the statute does not apply to them unless an actual corrupt intent is shown.

The remaining proposition of the defendants is that there was no intent to violate the law, but, on the contrary, the defendants sought to obey the law, and if they failed to do it, it was only a mistake of judgment for which they cannot be held responsible. It is true, there must be an intent to constitute a crime, but it is not correct to say that that intent must be to violate the law. The question is, did the defendants intend to do the thing they did do, and was that thing a violation of law? With this explanation and construction of the statute, and this statement of the doctrine of intent, I say to the jury, when the proof shows that the unlawful act was done, the law presumes the intent, and the proof of the act, that being in itself a violation of the law, is the proof of the intent. So that if these defendants are shown by the evidence to have done acts which in themselves are violations of law, the law presumes the intent, and the jury need

not look beyond the proof of the unlawful act for proof of an intent to violate the law.

There are nine courts in this indictment, but two of them only require any remark from me, for the prosecution admit that the evidence does not sustain the charges in the other counts of the indictment. The first count is that these defendants, as officers of election, fraudulently made a false certificate of the result of the election at the polling place, and at the election in question at Lanier's precinct, in Madison county, Alabama, on the second day of November, 1880. The question at once arises, is this a false certificate which is in evidence before you, and which certifies that one Joseph Wheeler, for member of congress, received 142 votes, and one William M. Lowe received 54 votes, at that polling place on that day? The answer to that question depends upon another, which is, was that ballot-box in question tampered with prior to the count out of the ballot; and is it true that false and spurious ballots, which had not been voted at that poll of election on that day, were substituted in the ballot-box for true and legal ballots which had been cast and voted that day at that election? In short, was the ballot-box stuffed, or did it contain only the true ballots which had been voted at that election on that day? If the ballots counted out and certified by the defendant inspectors were the identical ballots cast on that day and put in the box, then the defendants did not make a false certificate and return, but a true certificate, and they are not guilty under this charge.

Much evidence has been introduced to establish the proposition that this ballot-box had been opened and tampered with; that the contents of the box as counted out were not the contents voted and placed in the box. The prosecution claim that the evidence establishes the proposition that the box had been tampered with, and false ballots substituted for true ballots. The defence say, on the other hand, that the proposition has not been established by the evidence, and it is for you to determine that question of fact from the evidence as it has been detailed before you. If this proposition is not established, then the proposition that this certificate is false is not sustained, and you must acquit the defendants upon that charge. If, on the other hand, you find that the proposition is true, then it follows that the certificate is not a true but a false certificate, and you will then pass to the next inquiry, which is, was it fraudulently made by these defendant inspectors? For the proposition is not simply that they made a false certificate of the result of the election, but that they made it *fraudulently*. It is not claimed that these defendants manipulated this ballot-box

themselves, or made any change in its contents, or even that they were parties by knowledge or consent to the change which it is insisted was made; but the prosecution insists that the evidence shows that these defendant inspectors, whose duty it was to take care of the box and its contents, did not exercise diligence and care in regard to it, but were negligent and indifferent to its safety, so that an opportunity was offered to some evil-disposed person, who rifled it of its contents, and substituted false and spurious ballots for the true and legal ballots voted at that election on that day.

The question then is, does the evidence show such carelessness and negligence on the part of these defendant inspectors touching the safety of that box and its contents that you can justly and fairly infer fraud from it within the meaning of this statute? What does this word "fraudulent" mean, as used in reference to officers of election in this statute? An officer may be said to act fraudulently when he acts in bad faith, in disregard of his official obligation and legal duty. The law exacts from him fidelity, care, and diligence in the discharge of his duties, and if, in disregard of his official duties and obligations, he acts carelessly and indifferently, so that evil and mischief result, which can be traced to the negligent and indifferent conduct of the officer, he may be held responsible, and cannot escape upon the plea that he had no actual fraudulent intent in doing what he did, or in failing to do the thing which the law required.

No officer or person occupying a position of trust, in which is involved the welfare of others and the good of society, has a right to be indifferent and careless in the execution of his trust. This principle has a very wide application, and applies to individuals in positions of trust and responsibility, as well as to officers charged with official duties and responsibilities. No reason is perceived why it should not extend to officers of election who are charged with the performance of specified duties. On the contrary, there are strong and cogent reasons why it should be applied to them, for the very highest interests of society, and the very existence of popular government itself, depend upon the fidelity with which officers of election shall discharge the duties of their high trust.

When an officer of election has the means and ability to prevent mischief and fraud he must do so; and if, through his carelessness and indifference, the fraud is perpetrated, his negligent conduct under such circumstances becomes culpable, and is what the law calls criminal negligence.

The law does not attach culpability and impose punishment when there is no intent to evade its provisions, and where the usual means are used to comply with the law; but where the officer has the power and means to prevent the mischief, and fails to do so by reason of negligence and carelessness, he cannot be heard to say that he had no actual bad and criminal intent, and therefore cannot be held responsible for his conduct.

The law does not require impossibilities, and while it holds the officer to the faithful and diligent discharge of his duties, and is satisfied with no less, yet it exacts no more.

It may often happen that an officer may be ever so faithful, diligent, and careful in the discharge of his duties, and in spite of it all, evil may result, and fraud be perpetrated; but there being no wrongful intent, and no negligence and carelessness in the discharge of duty, which the law holds as its equivalent to supply the legal intent, the officer under such circumstances stands acquitted both in law and in morals.

What, then, is the test by which we are to determine the question whether an officer has discharged his duty, or whether he is culpable for his failure and neglect to perform his duty? It is this: An officer is bound to use that care and diligence in the discharge of his duties that a conscientious and prudent man, acting under a just sense of his obligation, would exercise under the circumstances of a particular case. Gentlemen of the jury, judge the conduct of these officers by that rule, and by it, as you find the facts, acquit or convict them of fraudulently making a false certificate of the result of the election in question.

The next charge is that these defendant inspectors neglected and refused to perform a duty imposed upon them by law, and violated a duty imposed upon them by law, in their failure to comply with section 246 of the Code of Alabama, which is in these words:

"It is the duty of all inspectors of elections in the election precincts, *immediately* upon the closing of the polls, to count out the votes so polled."

This is not a penal statute, and the defendants are not indicted under it; but they are indicted under section 5515 of the Revised Statutes of the United States, which prescribes a penalty for officers of election who neglect to perform duties, or who violate a duty, imposed upon them by law. This statute prescribes what the duty is, and the statutes of the United States make the duty mandatory that the inspectors shall, immediately upon the closing of the polls,

count out the votes so polled. The prosecution say that these officers violated this duty imposed upon them by law, because there was delay in proceeding to count out votes after the polls were closed. The word "immediately" here is the word to be construed, together with the other words of the section. It is to receive a reasonable construction, and does not mean that upon the instant or moment of time when the polls are closed that the counting shall begin, because that would be impossible and impracticable. Some time would ordinarily elapse and be employed in preparing for the counting out of the vote; but then it clearly does mean that there is to be no unnecessary delay; that upon the closing of the polls the next thing to be done is the counting out of the votes. It means that no other business shall intervene to occupy and distract the attention of the officers in charge until the matter in hand shall be consummated. This view of the matter rests upon reason as well as the letter of the law.

The object of the statute manifestly was that there should be no delay, because delays would offer opportunity for evil-disposed persons to tamper with the box, and change or rifle it of its contents. The object is that no opportunity shall be afforded which would serve as a suggestion or temptation to persons to tamper with the contents of the ballot-box.

It doubtless often occurs that some delay is necessary—as, for instance, to get lights; and in some cases a change of place from that where the voting was done might be rendered necessary by the circumstances surrounding the parties, and even the taking of food might be a necessity under the circumstances; but in such cases the ballot-box and its contents should be placed and kept securely in the custody and control of those responsible for it.

With this construction and understanding of the statute, you will determine from the evidence whether there was here such delay as is within the prohibition of the law.

Consider the evidence, gentlemen, as it has been detailed before you, in the light of the instructions which I have given, and determine by your verdict whether these defendants are guilty as charged, and if upon the evidence there is a reasonable doubt of their guilt, you will give them the benefit of that doubt, and find them not guilty; otherwise, you will find them guilty as charged in the indictment.