## SHOUSE et al. v. MOORE, Marshal, et al.

District Court, E. D. Kentucky, at Lexington. Aug. 31, 1935.

Robert H. Winn, of Mt. Sterling, Ky., J. Craig Bradley, of Georgetown, and Wallace Muir, Gayle Mohney, and W. W. Meeks, all of Lexington, Ky., for complainants.

Mac Swinford, U. S. Dist. Atty., of Cynthiana, Ky., for defendants.

FORD, District Judge.

A convention between the United States and Great Britain for the protection of migratory birds, which, in their migrations, traverse certain parts of the United States and the Dominion of Canada, was concluded and proclaimed on December 8, 1916 (39 Stat. 1702). Among the species of migratory birds included in the terms of the treaty are doves.

The treaty provides, among other things, that the close season on such migratory birds shall be between March 10th and September 1st, with the further provision that the season for hunting such birds may be further restricted not ex-

ceeding three and one-half months "as the high contracting powers may severally deem appropriate and define by law or regulation."

The expressed purpose and object of the treaty is to save such birds from indiscriminate slaughter and to insure their preservation on account of their great value as a source of food and in destroying insects which are injurious to forests and forage plants on the public domain, as well as to agricultural crops in both the United States and Canada, by providing adequate protection during the nesting season or while on their way to and from their breeding grounds.

On July 3, 1918, Congress passed a law to give effect to this treaty, providing, among other things, that it should be unlawful to hunt any migratory birds included in the terms of said treaty unless and except as permitted by regulations made as therein provided by the Secretary of Agriculture (U. S. Statutes at Large, volume 40, c. 128, p. 755, USCA title 16, §§ 703-711).

By section 3 of the act (USCA title 16, § 704), Congress authorized and directed the Secretary of Agriculture, with the approval of the President, to determine, from time to time, subject to the provisions of the International Treaty, when to allow hunting of such birds and to adopt suitable regulations governing the same, having regard "to the zones of temperature and to the distribution, abundance, economic value, breeding habits, and times and lines of migratory flight of such birds."

The act further provides that violation of any regulation made pursuant thereto shall be a misdemeanor, punishable by fine or imprisonment or both (16 USCA § 707).

Acting under the power and authority so conferred by Congress, the Secretary of Agriculture, with the approval of the President, recently promulgated and proclaimed certain regulations by the terms of which the open season for hunting doves in the state of Kentucky was fixed at October 1st to January 15th (by telegram filed in the record, this appears to have been changed and, since the filing of this action, the open season fixed at September 21st to January 5th). Thus, it will be noted that the close season on doves originally fixed by the treaty has been extended for approximately one month.

By the laws of Kentucky, the close season on the hunting of doves ends on September 1st.

This action has been instituted by a number of residents of Kentucky, who engage in and enjoy the sport of hunting doves, seeking to enjoin the United States marshal and the United States district attorney from enforcing the regulation made by the Secretary of Agriculture which deprives them of the right to hunt doves during the month of September and to enjoin these officers of the United States from arresting and prosecuting or causing the arrest or prosecution of any of the complainants who may engage in hunting doves after September 1st in violation of said regulation.

The first ground (set out in the complaint) upon which the complainants base their cause of action is that the effort to enlarge or extend the close season beyond the 1st of September is in violation of the terms of the treaty between the United States and Great Britain above referred to. A sufficient answer to this contention is found in the express provisions of the treaty authorizing either party to said treaty to extend the close season for such additional period as they may deem appropriate.

That the treaty is valid, and that laws enacted by Congress to effectuate the purposes of the treaty are paramount, was decided by the Supreme Court in the case of State of Missouri v. Holland, 252 U. S. 416, 40 S. Ct. 382, 384, 64 L. Ed. 641, 11 A. L. R. 984.

The complainants, therefore, do not question the right or power of Congress to legislate in accordance with and to effectuate the purpose of the treaty. They challenge, however, the constitutional validity of section 3 of the act (USCA title 16, § 704) on two grounds: (1) That said section is an unconstitutional delegation of legislative power in violation of article 1, § 1, of the Constitution, which provides that "all legislative Powers herein granted shall be vested in a Congress of the United States"; and (2) that said section, in failing to require the Secretary of Agriculture to give notice and an opportunity for a hearing to interested parties, before making a finding of fact upon which the regulations are based, is wanting in due process of law, and hence

is in violation of the "due process clause" of the Fifth Amendment of the Constitution.

■ In support of these grounds, the complainants chiefly rely upon the recent opinions of the Supreme Court in the cases of Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 248, 79 L. Ed. 446, and A. L. A. Schechter Poultry Corporation v. United States, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947, decided May 27, 1935. These cases deal with the validity of certain delegations of power to the executive under the National Industrial Recovery Act, and in each case the court held that the sections of the act in question constituted an unconstitutional delegation of legislative power. Both of these cases, however, clearly recognize that, while Congress cannot delegate its legislative power, it may confer upon executive officers the power to make regulations, as administrative rules, for the appropriate execution of the governmental policy laid down in the statutes.

These cases clearly recognize and point out the distinction between the mere conferring of administrative functions and the delegation of legislative power. They indicate no departure from the long-established rule that Congress may delegate power to an executive officer to determine some state of fact upon which the law makes, or intends to make, its own action depend. Field v. Clark, 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294.

■ The authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punishable as a public offense. United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 483, 55 L. Ed. 563.

In the Ryan Case, supra, the court clearly points out that: "The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply."

■ In making the migratory bird treaty with Great Britain, the policy stated is to provide adequate protection for migratory birds by establishing close season during which no hunting should be done. Recognizing the fact that a fixed and invariable period, under all conditions, was not wise, the provision was added authorizing a variation in the close season by extending it for a period not to exceed three and one-half months. Congress recognized that, in fixing and altering, from time to time, the close season, regard must be had to conditions of distribution, abundance, etc. In the nature of things, it was impracticable for Congress to provide general regulations for these various and varying details of administration. What might be injurious to migratory birds under some conditions or in certain years might not be so under other conditions in other years. It seems clear that, in authorizing the Secretary of Agriculture to meet these varying conditions, Congress was merely conferring administrative functions within the narrow limitations of the treaty, regulated by a very clearly defined standard and to effect a clearly announced purpose. Such was not true in the NRA cases, above referred to.

In the case of United States v. Grimaud, supra, the court dealt with the question of the delegation of regulatory powers to the Secretary of Agriculture under legislation somewhat similar to that involved in this case. By an act of 1891, certain forest reservations were established. By an act of 1905, the Secretary of Agriculture was authorized to make such rules and regulations as would be necessary to insure the objects of such reservation, to regulate their occupancy and to preserve the forests thereon from destruction. A violation of such regulations was made punishable by fine and imprisonment. Under the power so conferred, the Secretary of Agriculture made certain regulations prohibiting the grazing of sheep on the forest reservations, except under certain conditions and restrictions. No act of Congress prohibited or regulated the grazing of sheep on this public domain, but the matter was entirely left to be controlled by rules and regulations fixed by the Secretary of Agriculture. In upholding the regulations prohibiting the grazing of sheep and in upholding the infliction of punishment for

violating them, the court said: "None of these statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress."

The complainants call attention to several cases holding that the delegation of the power to an executive officer to make regulations based upon a finding of fact, without a hearing, comes under the condemnation of the due process clause of the Fifth Amendment.

█ In all of the cases referred to, the regulations dealt with property rights clearly protected by the "due process clause" of the Constitution. No such right is involved here. The preservation of game and fish has always been treated as within the proper domain of the police power. Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385. The constitutional guaranty that no person shall be deprived of life, liberty, or property without due process of law does not limit, and was not intended to limit, governmental regulation and control of migratory birds in which no right of individual property exists. As Mr. Justice Holmes said, in the case of State of Missouri v. Holland, supra: "Wild birds are not in the possession of any one; and possession is the beginning of ownership." Until actual capture has been effected, no property right is acquired by any person in migratory birds that for the moment are within the borders of a particular territory, but "that yesterday had not arrived, tomorrow may be in another state and in a week a thousand miles away." Hence, restrictions upon the privilege of hunting and killing migratory birds deprive no person of a property right which is within the protection of the Constitution. Thomson v. Dana (D. C.) 52 F.(2d) 759.

There is no allegation in the petition that the Secretary of Agriculture, in making a slight extension of the close season for hunting doves, has acted arbitrarily or without a proper regard for the purposes to be accomplished, as set out by Congress in the treaties and acts above referred to.

To sustain the contentions of the complainants in this case would obviously mean serious impairment, if not the destruction, of all effective national action for the protection of our valuable migratory birds. Such a result would perhaps be far more disastrous to the sport in which these complainants are interested than the slight restrictions of which they now complain. Concern for the welfare and protection of our migratory birds is not by any means limited to those whose chief interest in them rests in the sport of hunting and killing them. The object of providing for their protection and preservation reaches far beyond the motive of the huntsmen and the sport of hunting.

Only a clear demonstration of the unconstitutionality of the regulations now existing for the protection of these birds would warrant this court in declaring them invalid.

I am of the opinion that the congressional acts herein challenged and the regulations made thereunder should be declared valid and constitutional, that the injunction sought should be denied, and the defendants' motion to dismiss this action should be sustained.