**UNITED STATES v. SCHULTZE**
(two cases).

**SAME v. STEBBINS (two cases).**

Nos. 20147–20150.

District Court, W. D. Kentucky, at
Louisville.
July 5, 1939.

Eli H. Brown, III, Dist. Atty., of Louisville, Ky., for the United States.

B. M. Harwood, of Louisville, Ky., for defendants.

MILLER, District Judge.

The United States through its District Attorney filed separate criminal informations against Sid Schultze, Sr., Gordon Schultze, George Stebbins, Jr., and George Stebbins, Sr., charging said defendants with violation of 16 U.S.C.A. § 703, and the regulations promulgated thereunder pertaining to the hunting and killing of migratory birds. The four cases were heard together.

The pertinent part of Section 703 of Title 16 reads as follows: "Unless and except as permitted by regulations * * * it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, * * * any migratory bird, * * * included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds concluded August 16, 1916 * * * and the United States and the United Mexican States for the protection of migratory birds and game mammals concluded February 7, 1936."

The particular regulation which is important in the present cases is Regulation 3, promulgated by the Secretary and approved by the President, as of July 16th, 1938, and which provides as follows: "Waterfowl * * * and mourning doves and white-winged doves are not permitted to be taken by means, aid, or use, directly

or indirectly, of corn, wheat, oats, or other grain or product thereof, salt, or any kind of feed whatsoever, placed, deposited, distributed, scattered, or otherwise put out whereby such waterfowl or doves are lured, attracted, or enticed, regardless of the distance intervening between any such grain, salt, or feed and the position of the taker." 16 U.S.C.A. § 704 note.

The information in each case charges in count 1 that the defendant on September 1, 1938, did by means of wheat and kaffir-corn put out whereby mourning doves were lured and enticed, hunt mourning doves, which are migratory game birds included within the terms of the conventions for the protection of migratory birds, and charges in count 2 that the defendant did on September 1, 1938, under the same circumstances kill mourning doves which are migratory game birds included within the terms of the conventions for the protection of migratory birds. The evidence showed that an area of about 12 feet wide and 100 feet long in the edge of a corn field on the lower river road in Jefferson County, Kentucky, was baited with wheat and kaffir-corn, but it did not show that any one of the defendants had caused this area to be so baited or even knew that it was so baited. The defendants arrived by automobile at about 6:45 a. m. on September 1, 1938, and hunted and killed mourning doves in the close vicinity of the baited field. When arrested each of the defendants had several doves in his possession and freely admitted in a written statement that the doves had been so killed by them. Evidence also showed that during the period of time referred to a number of mourning doves flew towards the baited field and lighted in some locust trees that were not more than 30 yards from some of the wheat and kaffir-corn. The defendants contend that inasmuch as they did not place or cause to be placed the wheat and kaffir-corn in the field in question, and did not know that the field was so baited at the time when they hunted and killed the mourning doves, their acts did not constitute the offenses charged, and insist that scienter is an essential element of the offense.

■ The Supreme Court of the United States in Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641, 11 A.L.R. 984, held that the Treaty of December 8, 1916, between the United States and Great Britain, 39 Stat. 1702, and the Act of July 3, 1918, 16 U.S.C.A. § 703 et seq., to give effect to the treaty are valid. The validity of the regulations involved in this case were upheld in the case of Shouse v. Moore, D.C., 11 F.Supp. 784, from the Eastern District of Kentucky, where the question was fully discussed. This ruling is in accord with the general principles held by the Supreme Court of the United States in United States v. Grimaud, 220 U. S. 506, 31 S.Ct. 480, 55 L.Ed. 563, which holds that the authority to make administrative rules is not a delegation of legislative power.

■ At common law a crime was not committed if the mind of the person doing the act complained of was innocent, and it was necessary to prove in order to sustain a conviction that a guilty intent existed at the time of the act complained of. In common law crimes scienter was necessary. However, it is well settled that the same rule does not necessarily exist in the case of crimes created by statute and that in some statutory crimes the criminal intent is not an essential element. Whether or not criminal intent is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute, in view of its purpose and design. In the case of Shevlin-Carpenter Company v. State of Minnesota, 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930, the Supreme Court held that the Legislature of a State could pronounce an act to be a crime although scienter was not present, in that public policy required in some cases that certain acts should be done at the peril of the party committing them, and in such cases the defendant would not be heard to plead in defense good faith or ignorance. In the case of United States v. Balint et al., 258 U.S. 250, 42 S.Ct. 301, 302, 66 L.Ed. 604, which was presented to the Supreme Court on a demurrer to an indictment charging the defendants with a violation of the Narcotic Act of 1914, 38 Stat. 785, the Court said: "While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it * * * there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court. It has been objected

236

that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But that objection is * * * overruled in Shevlin-Carpenter Company v. Minnesota, 218 U.S. 57, 69, 70, 30 S.Ct. 663, 666 (54 L.Ed. 930), in which it was held that in the prohibition or punishment of particular acts, the state may in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.'" See also the cases of United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; United States v. Baldridge et al., C.C., 11 F. 552; Landen v. U. S., 6 Cir., 299 F. 75. It is therefore necessary in the present case to determine from the wording of the statute, viewed in the light of its enactment whether or not Congress intended to make scienter an essential element of the offense.

The statute provides " * * * it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill * * * any migratory bird, * * * ." The statute fails to use the word "willfully" or the word "knowingly", or any similar phrase. The underlying treaty of December 8, 1916, between the United States and Great Britain recited that many species of birds in their annual migrations traversed certain parts of the United States and Canada, that they were of great value as a source of food and in destroying insects injurious to vegetation, but were in danger of extermination through lack of adequate protection. It provided for specified close seasons and protection in other forms and agreed that the two nations would take the proper steps for carrying out the purposes of the treaty. As was said in Shouse v. Moore, supra, [11 F.Supp. 785]: "the expressed purpose and object of the treaty is to save such birds from indiscriminate slaughter and to insure their preservation on account of their great value as a source of food and in destroying insects which are injurious to forests and forage plants on the public domain, as well as to agricultural crops in both the United States and Canada, by providing adequate protection during the nesting season or while on their way to and from their breeding grounds." In view of the broad wording of the act, and the evident purpose behind the treaty and the act, this Court is of the opinion that it was not the intention of Congress to require any guilty knowledge or intent to complete the commission of the offense, and that accordingly scienter is not necessary. The beneficial purpose of the treaty and the act would be largely nullified if it was necessary on the part of the government to prove the existence of scienter on the part of defendants accused of violating the provisions of the act. This construction does not carry with it any severe or harsh penalty on the part of innocent offenders. The punishment provided by the act (16 U.S.C.A. § 707) is a fine of not more than $500 or imprisonment not more than 6 months, or both, and accordingly the trial judge in his discretion makes the penalty fit the facts in the particular case under consideration. An innocent technical violation on the part of any defendant can be taken care of by the imposition of a small or nominal fine. This construction of the act is also in accord with the decision of the United States District Court for the Western District of Tennessee in the case of United States v. Hubert K. Reese, 27 F.Supp. 833, decided June 13, 1939.

Accordingly, the Court is of the opinion that in each of the four cases under consideration the defendant is guilty under both counts of the information in question, even though there was no evidence of any guilty knowledge or intent upon his part at the time of the commission of the offense.