M. Allen CLEMONS et al., Appellants,

v.

UNITED STATES of America,
Appellee.

No. 13051.

United States Court of Appeals
Sixth Circuit.

June 1, 1957.

Oliver True, Port Clinton, Ohio (Leslie E. Meyer, Port Clinton, Ohio, on the brief), for appellants.

Clarence M. Condon, Asst. U. S. Atty., Toledo, Ohio (Sumner Canary, U. S. Atty., Cleveland, Ohio, on the brief), for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

Appellants were charged by information with violation on November 9, 1955, of the Migratory Bird Treaty Act, 16 U. S. §§ 701–718i, 16 U.S.C.A. §§ 701–718i, and of the regulations published thereunder in 1955 by the Secretary of the Interior. It was admitted that wild ducks, which are protected by the statute, were taken by appellants on the date charged. Section 703 provides that "Unless and except as permitted by regulations made as hereinafter provided * * it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, or kill * * * any migratory bird * * * included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds. * * * "

Under Section 704 the Secretary of the Interior is authorized to determine to what extent if at all, and by what means, it is compatible with the terms of the conventions to allow hunting, taking, capturing, and killing of such migratory birds. Section 707 makes the violation of the statute and of regulations made pursuant thereto a misdemeanor.

The shooting took place from two blinds upon the property of appellant, M. Allen Clemons, and his brother situated in Ottawa County, Ohio. A stipulation between the parties shows that ducks were shot from each of the two blinds in question, called the north shooting hole and the south shooting hole. Artificial feed, namely, buckwheat, had been distributed on this property intermittently from September 25, 1955, to about November 1, 1955, and almost daily from November 1, 1955, up to November 9, 1955, one bushel of buckwheat being placed in each feeding area at each feeding. On November 9, 1955, no artificial feed was found or present nearer to the north shooting hole than 729 feet or 243 yards, or nearer to the south shooting hole than 315 feet or 105 yards.

Appellants were convicted of violating Section 6.3(b) (1) of the regulation of 1955 which provides:

"Migratory game birds may not be taken by the aid of salt, or shelled or shucked or unshucked corn, wheat, or other grains, or other feed or means of feeding similarly used to lure, attract, or entice such birds to, on, or over the area where hunters are attempting to take them."

On September 19, 1955, prior to the opening of the hunting season, the date of which was October 18, 1955, appellant M. Allen Clemons wrote the Secretary of the Interior requesting answers to certain questions as to the scope of Regulation 6.3(b) (1) quoted above, claiming that this regulation is so indefinite as to require departmental interpretation. The pertinent part of the questions is printed in the margin.[1]

A reply was received dated October 31, 1955, signed by Wesley A. D'Ewart, Assistant Secretary of the Interior. The pertinent part of that letter reads as follows:

1. First: * * * will it or will it not be a violation of law to hunt or shoot at a point 100 yards or more away from the nearest point where grain or other feed has been placed?

Second: What is the meaning of the "area where hunters are attempting to take them"? * * * the "area where hunters are attempting to take them" should be interpreted to mean an area slightly greater than maximum gun range from the point where the hunter is at the time situated.

Third: What criteria may be safely used in determining what constitutes a "lure"? * * *

Fourth: When marshlands include or are adjacent to flooded grain fields or flooded standing crops, what criteria may be used to determine whether the birds are "lured" or hunted by the aid of the grain fields or standing grain * * *?

Fifth: * * * What * * * is the definition of "live duck or goose decoys" and what criteria may be safely applied to determine whether birds constitute live decoys?

"It is interesting to note that that portion of the regulation which prohibits the taking of birds lured to the 'area where hunters are attempting to take them' was first promulgated in 1935 and has remained virtually unchanged since that time. There have been changes in the regulations which dealt with the manner in which bait may have been placed as well as with respect to collateral matters, and several years ago the regulation contained a prohibition against the taking of birds within one-half mile of any place where bait existed. Again, the regulation now permits shooting over certain types of habitat that previously were included in the prohibited means of shooting. These changes, however, were merely additional features and did not alter the basic prohibition against taking 'baited' birds.

\*　　\*　　\*　　\*　　\*　　\*

"Since there are two acts involved in determining whether a violation has occurred, one of feeding, and the other of attempting to take the birds, we must consider two areas.

"Although the term 'area' as used in the regulation is not specifically defined, it obviously has reference to the location of the hunter and it seems rather clear that it includes all of the area within which an attempt is possible within the legal sense. Beyond the area of attempt there is still another much greater area within which if feeding results in the luring of birds to this larger area may result in fact in the luring of birds 'to, on, or over' the more limited area within which attempt is possible."

Copies of these two letters were received by Fred L. Jacobson, United States Game Management Agent-in-Charge for the Fish and Wild Life Service of the State of Ohio. Appellants contend that the letter of the Assistant Secretary is an official interpretation of the regulations binding on the courts under Bowles v.

Seminole Rock & Sand Co., 325 U.S. 410, 413, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, which holds that a court must look to the administrative construction of an administrative regulation if the meaning of the words used is in doubt and also declares that "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."

The Assistant Secretary's letter noted that part of this regulation was first promulgated in 1935 and has remained virtually unchanged. He added, "There have been changes in the regulations" but they "did not alter the basic prohibition against taking 'baited' birds." Relying on these statements with reference to the Regulations of 1935, appellants urge that a pamphlet issued by the Bureau of Biological Survey of the Department of Agriculture in that year, said to interpret in appellants' favor the Regulations of 1935, is binding here. If the District Court's conclusion that this publication was not controlling constituted error, it was error to the advantage of appellants. The Exhibit specifically provides that the hunter may not take advantage of the bait to bring the birds to his shooting "either by placing his blind in the line of flight to and from the baited area, or shooting from any position where the birds are affected by the baiting." This construction supports the Government's position here for it was proved that the line of flight of the birds was from the feeding holes to and over the blinds.

Also, relying on the doctrine of administrative interpretation, appellants urge that, since the Assistant Secretary's letter stated that the term "area" includes all of the area within which an attempt is possible, the conviction is plainly invalid because an attempt to shoot the birds was not possible except within maximum gunshot range, which they testify is a distance of not more than 70 yards from each of the blinds. Since grain was distributed to the north and south feeding holes but not within 70 yards of either

blind, appellants argue that the regulations were not violated.

They also contend that the District Court committed reversible error in admitting, for purposes of mitigation only, the letter of the assistant Secretary and the interpretation of the regulations of 1935, put out by the Bureau of Biological Survey of the Department of Agriculture.

Appellants have cited no adjudication in support of their contention, which is in effect that an interested party by simply addressing a letter to the head of the department charged with the duty of enforcing regulations is entitled to avail himself of the departmental answer received, in absence of any practical construction, on the ground that it constitutes an administrative construction binding on the courts.

Independent research has shown no case nor text supporting such a wide extension of the doctrine of administrative interpretation. The scope of the contention made here is thrown into sharp light by the questions submitted in the letter of September 19. In Question No. 1 the Secretary is asked to commit himself as to what constitutes a violation of the regulations, although this is a matter committed to the courts. Question No. 2 states appellants' theory as to how the regulation should be interpreted and seeks to establish this as law by the simple medium of an answer received but never promulgated or acted upon in the Department. The succeeding questions seek to elicit from the Secretary definitions of a lure and the criteria to be used to determine whether birds are lured by bait. A definition is sought of live duck or goose decoys. If such definitions should be elicited, appellants contend, the letter stating the definitions, without any practical construction, constitutes the ultimate criterion described in Bowles v. Seminole Rock & Sand Co., supra. We think this doctrine has no support in the law.

More specifically, appellants' contentions are untenable for three reasons:

1. Under the plain terms of the letter of the Assistant Secretary it cannot be concluded that the Assistant Secretary is advising that a violation of Section 703 occurs only when birds are lured or fed within the maximum gun range. As the Assistant Secretary expressly states, the term "area" used in the 1955 regulation is not specifically defined. The Department could not by interpretation set limits to the area not established by the regulation or the statute. Moreover, the second sentence of the letter declares that beyond the area of attempt there is still another much greater area within which, if feeding results in the luring of birds to this larger area, a violation of the regulation in fact may exist. Assuming, though not deciding, that the area of attempt may be legally defined as maximum gun range, namely, a distance of not more than 70 yards, the fact still remains that under the stipulation the feeding was shown to be within the much greater area as defined in the Assistant Secretary's letter and the record shows beyond a reasonable doubt that birds were lured to and over the shooting blinds from this greater area.

2. The letter of the Assistant Secretary is not a binding interpretation of an administrative regulation. It has neither been promulgated nor published in the Federal Register. It has had no construction by actual enforcement.

As pointed out in McLaren v. Fleischer, 256 U.S. 477, 480, 481, 41 S.Ct. 577, 65 L.Ed. 1052, the official interpretation which is binding is one which is enforced in the practical administration of the statute or regulation, uniformly and for a long period of time. Such an interpretation, acted on for a number of years, will not be disturbed except for cogent reasons. McLaren v. Fleischer, supra, 256 U.S. 481, 41 S.Ct. 578. As declared in Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566, when a statute is not ambiguous and the administrative construction claimed to be binding is neither uniform, general, nor long-continued, such a departmental construc-

tion cannot be given the force and effect of law. To the same effect see Mr. Justice Hughes in Burnet v. Chicago Portrait Company, 285 U.S. 1, 16, 52 S.Ct. 275, 76 L.Ed. 587.

3. Moreover, the regulation is unambiguous. The words used are ordinary, nontechnical words, readily understandable. The parts of the regulation in issue here, as the Assistant Secretary recognizes in his letter, have been retained over a number of years, including the basic prohibition against baiting birds. This indicates that the provisions are clear and require no construction. Cf. United States v. Missouri Pacific Railroad Company, 278 U.S. 269, 277, 280, 49 S.Ct. 133, 73 L.Ed. 322.

The District Court was clearly correct in its view of the regulation.

As to the question of reasonable doubt, the case was tried to the court and hence no charge to the jury is involved. The court made no declaration that the rule of reasonable doubt was not to be applied in the case and we assume that it was not ignored. The Government proved by convincing evidence that the birds were lured from the feeding holes to, on, or over the blinds.

M. Allen Clemons's own admission with reference to the effect of the feeding was that the grain is used to lure the birds. Clemons stated to Jacobson that he wouldn't get a dozen birds in a season if he didn't do that; as it is he gets 400 to 500 in a season. This testimony was not disputed in the trial. It was conceded that on the day in question 6 ducks were killed in the north shooting hole and 2 or 3 ducks in the south shooting hole. Jacobson testified a bird came in from the north feeding area and was brought down at the north shooting hole. Two witnesses testified that the flight pattern of the ducks led them from the feeding holes to and over the blinds. While this was disputed, it is corroborated by the testimony of appellant M. Allen Clemons given above.

As all appellants parked on the property, went to one or the other of the Clemons blinds, and participated in the shooting in both shooting holes in violation of the clear prohibitions of the regulation their convictions are supported by the proper degree of proof. There is nothing in the record to indicate that the court construed the regulations liberally in favor of the Government and against appellants. The trial was fair and, in view of the court's suspending in each case the sentence of imprisonment imposed, upon payment of the fine assessed, the sentences were reasonable.

The judgment of the District Court is affirmed.