**UNITED STATES of America**

v.

**Jay W. TARMON, W. T. Rudd, James F. Brogley, Robert F. Sears, Phillip H. Scott, Edward Stanfield, Jr., George A. Loose.**

**Cr. No. 26532.**

United States District Court
D. Maryland.
March 25, 1964.

Thomas J. Kenney, U. S. Atty., Robert J. Carson and Ronald T. Osborn, Asst. U. S. Attys., Baltimore, Md., for United States.

Zebulon H. Stafford, Easton, Md., for defendants.

THOMSEN, Chief Judge.

This case presents the question whether and under what circumstances "taking" migratory birds during the hunting season in a field over which corn has been scattered before the season opens amounts to a violation of the Migratory Bird Treaty Act, 16 U.S.C.A. §§ 703–711, and regulations promulgated thereunder.

The information filed against Tarmon, Brogley and five others charges that on or about the 9th day of November, 1962, the defendants "without being permitted so to do by any regulation made, adopted, and approved under the authority of the Migratory Bird Treaty Act of July 3, 1918, as amended, did pursue, hunt, take, capture, kill, and did attempt to take, capture, and kill certain migratory fowl, to wit, wild geese, by means, aid, and use of corn so deposited, distributed, and scattered as to constitute a lure, attraction, and enticement in the hunting of fowl * * *." Reference was made to 16 U.S.C.A. §§ 703–711 and to 18 U.S.C.A. § 2(a), which makes one who aids and abets an offense guilty as a principal.

The evidence admitted against defendants Tarmon and Brogley shows that in the fall of 1962 they leased as partners the hunting rights in the major part of a large corn field on the Moneymake Farm in Talbot County, Maryland, near a creek which thousands of Canada geese use as a "resting place". The partners constructed three pits in the center of the field, and advertised in national magazines for customers to hunt with them. Four of the defendants were hunting in the field on November 9th and Tarmon, Brogley and another were acting as guides.

The field had been harvested in mid-September, and since the owner is said to be a frugal man, probably less than the average 3% of the crop was left on the field. At any rate, Tarmon and Brogley "put out" more than 50 bushels of corn between mid-October and November 9th, the first day of the hunting season, of which 25 bushels or so were placed near the blinds during the first seven days in November, some on the 3d or 4th, some on the 6th or 7th days of that month. Only an occasional grain remained near the pits on November 9th, although there were a few cobs near a chicken house and other farm buildings just off the field, too far away to be a lure. The owners or lessees of other farms near the creek customarily feed the geese before each season; the evidence is silent as to what they do during the season.

Under the provisions of the Act the Secretary of the Interior is authorized and directed to determine when, to what extent, if at all, and by what means migratory game birds may be hunted. At all times in question there were in effect duly promulgated regulations prohibiting certain methods by which migratory game birds might be taken. One of the prohibited methods was as follows, 50 C.F.R. § 10.3(b) (9), 1961 ed.:

"By the aid of baiting, *or on or over any baited area.* As used in this subparagraph, 'baiting' shall mean the placing, exposing, depositing, distributing or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt or other feed so as to constitute for such birds a lure, attraction or enticement to, on or over any area where hunters are attempting to take them; *and 'baited area' means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt or any other feed whatsoever capable of attracting such birds is directly or indirectly placed, exposed, deposited, distributed or*

**482**

*scattered.* Nothing in this subparagraph shall prohibit the taking of such birds over standing crops, flooded standing crops (including aquatics), flooded harvested croplands, grain crops properly shocked on the field where grown, or grains found scattered solely as the result of normal agricultural harvesting." (Emphasis supplied.)

■■ Tarmon and Brogley contend that they quit feeding on November 4th, five days before the opening of the hunting season. Defendants argue that in order to constitute "baited area" bait must be there at the time of the commission of the act charged. That is not the law. The defendants "violated the regulation, whether they did so by the indirect method of so baiting before the season as to create an attraction for the birds after the season opened or by the direct method of placing the grain in the water [or on the ground] in front of blinds during the hunting season." Koop v. United States, 8 Cir., 296 F.2d 53, 58 (1961), following Cerritos Gun Club v. Hall, 9 Cir., 96 F.2d 620, 624 (1938). The Court has found as a fact that defendants placed corn near the pits on November 6th or 7th. The testimony of the Game Management Agents shows that repeated feeding in a particular area will constitute a lure for at least four days after the last corn is placed on the ground. The Court finds that on November 9th the area around the pits in the corn field constituted "baited area" within the meaning of the regulation.

■ Scienter is not an element of the offense charged and need not be proved. United States v. Reese, W.D.Tenn., 27 F.Supp. 833, 834 (1939); United States v. Schultze, W.D.Ky., 28 F.Supp. 234 (1939); and scores of unreported cases in this Court. Nevertheless, the government is required to prove its case beyond a reasonable doubt. It has done so as against Tarmon and Brogley, but has failed to do so as against the other defendants. Statements made by Tarmon on behalf of the partnership to the Game Management Agents on the afternoon of November 9th were not admissible against the other defendants.

The Court finds Tarmon and Brogley guilty as charged. The Court finds the other defendants not guilty.