Renwick L. ALLEN and Courtney Vallentine, Appellants,

v.

Lawrence J. MEROVKA, L. J. Dugger, and Robert G. Kinghorn, Appellees.

No. 9330.

United States Court of Appeals Tenth Circuit.

Oct. 4, 1967.

O. R. Adams, Jr., Albuquerque, N. M., for appellants.

Robert M. Perry, Atty. Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., John F. Quinn, U. S. Atty., Ruth C. Streeter, Asst. U. S. Atty., Roger P. Marquis, Atty., Dept. of Justice, with him on the brief), for appellees.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

Appellants commenced this action to restrain the appellees, who are or were federal game wardens, from trespassing on appellants' land, from conspiring with state officers to prevent appellants from hunting on their land, and for damages for trespass. The trial court entered a summary judgment for the defendants, and plaintiffs took this appeal.

It appears from the record that New Mexico game officials and appellants before this incident had been engaged in litigation lasting over several years concerning appellants' right to hunt on their land. The tract giving rise to the issues is surrounded on three sides by a small state game refuge for waterfowl. The state courts have restrained the state officers from treating the appellants' land as a game refuge without condemnation proceedings, but some portion of this litigation is still pending. The action by the federal officers with which this case is concerned took place, at least in part, at a time when there was an injunction in force against the state officers, and apparently after the state and federal officers had consulted each other on the matter.

The state as part of its operation of the adjoining refuge raised a corn crop on it, and when the waterfowl were in the area during hunting season, the state had the corn knocked down on the ground in the field where it was grown so the birds could feed upon it. It is this corn on the state refuge which the federal officers treated as "baiting," and so sought to prohibit appellants from hunting on their land adjoining. This they did by posting signs on appellants' lands that they were "baited," and hunting was prohibited. The record shows that the ducks and geese were attracted by this corn to the refuge and thereby some passed over appellants' land. There appears to be no question that there was nothing on appellants' land by way of feed for waterfowl, there being only tumbleweeds and a few trees.

The appellees rely for their acts upon the regulation concerning the baiting of waterfowl, 50 C.F.R. § 10.3(b) (9). This regulation relates to "hunting methods," and to prohibited hunting methods. One such prohibited method of hunting is described in subsection (9):

"(9) By the aid of baiting, or on or over any baited area. As used in this subparagraph, 'baiting' shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt or other feed so as to constitute for such birds a lure, attraction, or enticement to, on or over any area where hunters are attempting to take them; and 'baited area' means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed or scattered."

The regulation and the statute (16 U.S.C. § 704) both contemplate that the restrictions are on the means used in taking waterfowl. The restriction with which we are here concerned relates to a particular hunting method—by the "aid of baiting." "Baiting" is defined in the

regulation as the placing of feed in a manner to constitute a lure for the birds on or over the place where the hunters are attempting to take them. A "baited area" is the place where the feed is placed. The prohibited "hunting method" thus contemplates that the hunting and the feeding are in some way related, and that the hunters are performing or have some part directly or indirectly in the baiting or it is done for their benefit as a part of a "hunting method." The acts of third parties totally independent of the acts of hunting should not be used to make illegal what otherwise is proper. The prohibited acts refer to those of the hunter, not to the independent and unrelated acts of others. The regulations formerly attempted to expressly cover situations regardless of who may have placed the feed, but were changed to the present wording. This change is significant in deciding the problem before us.

█ Since the Act and the regulation pertain to the hunting methods as above described, they were not applicable to the appellants under the facts in the record before us, and the trial court was in error in granting summary judgment.

No cases have been found to the contrary on the above point except United States v. Shultze, 28 F.Supp. 234 (W.D. Ky.1939), where the feed was on the land of others and unknown to the hunters, but the court nevertheless held the defendants had violated the regulations. The court there said of the knowledge problem that: "An innocent technical violation on the part of any defendant can be taken care of by the imposition of a small or nominal fine." This adjustment of the penalty does not appeal to us as a basis for handling "innocent" violations or to assist in the construction of the regulations.

The court in Cochrane v. United States, 92 F.2d 623 (7th Cir.), was concerned with the basic question of the validity of the regulations, and with a situation where the employees of a duck club dumped corn in a lake to attract ducks. The court said a violation of the regulations was shown not by the feeding as such, but by the feeding conducted in a certain way as to lure the ducks close to the hunters. Thus the court looked at the purpose of the feeding and who did the feeding in relation to the hunters, and hence as a coordinated plan or hunting method.

Appellees cited Clemons v. United States, 245 F.2d 298 (6th Cir.), and Converse v. United States, 227 F.2d 749 (6th Cir.), apparently as authority for their position. However, in Clemons the feeding was done regularly and frequently on the property where the hunting took place, and again it appears to have been performed in relation to the hunting and as a part of it. In the Converse opinion the facts are not developed on this point. In the often cited Cerritos Gun Club v. Hall, 96 F.2d 620 (9th Cir.), the issue arose from the organized feeding by gun clubs for the benefit of their members. These cases are quite different from the case at bar, where the feeding was totally unrelated to any hunting activities by individuals, and was obviously not done to lure the ducks for the hunters. Thus, as indicated above, the regulation was not applicable. We do not however decide whether the feeding by the state authorities constituted "baiting" or not.

█ The appellants urge that the trial court was also in error in denying summary judgment as to their trespass claim. The record shows that the appellee-defendant game officers entered the property of the appellants without a warrant and thereon placed signs prohibiting hunting. There appears to be no authority for the appellees to so go upon the appellants' land for the purpose they did. The appellees argue that this was part of their "enforcement of federal hunting regulations," citing Hughes v. Johnson, 305 F.2d 67 (9th Cir.). The cited case concerned the inspection of cold storage plant records, and the court stated that the complaint indicated the incident to be an inspection of records and not a search. The court further granted the plaintiffs leave to amend, as it was clear that a search without a warrant in violation of the fourth amendment was not within the official duties of the officers

so as to afford them official immunity. The Government argues in the case before us that: "Here, obviously no search warrant was necessary, as there was nothing that needed to be secured by the use of a warrant." This argument could only be based on the premise that the agents were enforcing hunting regulations. However the posting of signs on appellants' land does not appear to be such an enforcement under the facts before us even if such would give them a right to enter. The acts are not within Hughes v. Johnson, 305 F.2d 67 (9th Cir.), as appellees argue, nor any other authority.

Reversed and remanded.