UNITED STATES of America,
Appellee,

v.

Graham F. JARMAN, Jr., Appellant.

UNITED STATES of America,
Appellee,

v.

Carroll B. ROBERTSON, Appellant.

UNITED STATES of America,
Appellee,

v.

Leroy W. WHEELER, Appellant.

Nos. 73–1532—73–1534.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 1, 1973.

Decided Jan. 28, 1974.

W. P. Morris farm in eastern North Carolina. On the opening of hunting season for mourning doves three days later, September 2, 1972, the agents returned and found a hunt in progress. The soil had been newly disked, however, and grain was no longer visible. Nevertheless, thirty-three hunters (three of whom now appeal their convictions) were cited for violations of the Migratory Bird Treaty Act and the baiting regulation made pursuant thereto.[1]

Richard B. Allsbrook, Roanoke Rapids, N. C. (Julian R. Allsbrook and Allsbrook, Benton, Knott, Allsbrook & Cranford, Roanoke Rapids, N. C., on brief), for appellants.

Christine A. Witcover, Asst. U. S. Atty. (Thomas P. McNamara, U. S. Atty., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This is a criminal action arising under the Migratory Bird Treaty Act, 16 U.S.C. § 703 et seq., which prohibits the hunting of migratory birds except under certain conditions.

On August 30, 1972, federal agents discovered a heavily baited field on the

On appeal, the defendants raise three issues: (1) The federal hunting regulation under which they were charged, 50 CFR § 10.21(j), was unconstitutional both on its face and as applied; (2) they should have been granted a trial by jury even though the violation with which they were charged would be considered a petty offense; and (3) the evidence was insufficient to justify a verdict of guilt beyond a reasonable doubt. For reasons that follow, we are of opinion these contentions are without merit, and, accordingly, affirm the decision of the district court.

The essential facts are not disputed. On August 30, 1972, a federal Game Management Agent on patrol with a North Carolina Wildlife Protector discovered a heavily baited field on the W. P. Morris farm in Northhampton Coun-

---

1. The applicable regulation, 50 C.F.R. § 10.21, provides in relevant part:

"§ 10.21 Hunting methods.

Migratory birds on which open seasons are prescribed in this part may be taken by any method except those prohibited in this section. No person shall take migratory game birds:

\*    \*    \*    \*    \*

(j) By the aid of baiting, or on or over any baited area. As used in this paragraph, 'baiting' shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked or unshucked corn, wheat or other grain, salt, or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and 'baited area' means any area where shelled, shucked or unshucked corn, wheat or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, de-

posited, distributed, or scattered; *and such area shall remain a baited area for 10 days following complete removal of all such corn, wheat or other grain, salt, or other feed.* However, nothing in this paragraph shall prohibit:

\*    \*    \*    \*    \*

(2) The taking of all migratory game birds, except waterfowl, on or over any lands where shelled, shucked or unshucked corn, wheat or other grain, salt, or other feed has been distributed or scattered solely as a result of valid agricultural operations or procedures." (Emphasis added.)

The information under which the defendants were charged specifically applied the provision italicized above, and added for the first time in July, 1972, which reads as follows:

" . . . and such area shall remain a baited area for 10 days following complete removal of all such corn, wheat, or other grain, salt, or other feed. . . ."

ty, North Carolina. They took pictures and samples of the grain in the swath bisecting the cleared area. On September 2, 1972, three days later, the defendants were guests at an annual dove hunt that was being held at the Morris farm. The hunters were driven out in the fields and placed in stands or blinds located approximately 50 feet apart. Alerted that a hunt was taking place, federal and state wildlife agents arrived three hours after the hunt began to find large concentrations of doves encircling the entire area. No swath of grain was visible, however, since the soil had been newly disked. The agents, nevertheless, issued each defendant a violation notice for shooting over baited land. All three defendants were subsequently convicted of the offense of unlawful and willful hunting of game birds on and over a baited area.

Regulations drafted pursuant to the Migratory Bird Treaty Act have treated the hunting of certain birds under baited conditions as an offense since 1938.[2] In July, 1972, however, the regulation was amended to establish a ten day period during which an area would be considered baited even after removal of the bait. Because no grain was visible in the hunting area at the time of the arrests, the new provision added by the July, 1972 amendment necessarily formed the basis for the information.

■ The defendants' first contention is that the regulation, 50 CFR § 10.-21(j), is unconstitutionally vague. In particular, they assert that enforcement of the new proviso deprives them of liberty and property without due process of law in violation of the 14th Amendment since it cannot be determined with any degree of certainty what constitutes "complete removal" of the bait.[3]

We are of opinion that this contention is lacking in merit. The basic provision forbidding the hunting of birds over baited areas has been in effect since July 16, 1938. The July, 1972 amendment did not change the basic proviso but only defined precisely in terms of days the extended period during which an area is regarded as baited.[4] As the Sixth Circuit observed in interpreting the previous regulation, although not the words "complete removal," "The words used are ordinary, nontechnical words, readily understandable. . . . The provisions are clear and require no construction." Clemons v. United States, 245 F.2d 298 (6th Cir. 1957). For similar reasons, we feel that the amended regulation is not so unconstitutionally vague or ambiguous so as to constitute a deprivation of liberty and property without due process of law.

We are thus of opinion that the words "complete removal" are neither vague nor ambiguous, and whether or not bait has been completely removed from a field is a matter of fact to be determined by usual rules of evidence.

■ Although the 1972 amendment was published in the Federal Register on July 8, 1972 and then reprinted and distributed in pamphlet form in August, 1972 by the U. S. Department of the Interior, the defendants claim they were not familiar with the regulation change. In this regard, the defendants contend that *scienter* should, judicially, be made part of the offense. Courts have held, repeatedly, however, that Congress may create a crime and omit *scienter* as an element so that even an unknowing violation will support a conviction. And

---

2. See United States v. Schultze, 28 F.Supp. 234 (W.D.Ky.1939).

3. The defendants advance this constitutional argument even though they appear to concede that the field was baited as recently as three days before the hunt.

4. Nor do we feel that the 1972 amendment constitutes as startling an innovation as the defendants would have us believe. Courts had interpreted the original regulation to hold that the attraction of bait remains even after complete removal. See Koop v. United States, 296 F.2d 53 (8th Cir. 1961) (recognized attraction for ducks for at least four days after baiting ceased).

this is especially true, as here, where the offenses charged have no common law origins. United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); United States v. Schultze, 28 F.Supp. 234 (W.D.Ky.1939). Cf. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

■ The defendants next contend they should have been granted their request for trial by jury. But, neither Article III, § 2 of the Constitution which provides, "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury," nor the sixth amendment which states, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury," applies to petty offenses. Frank v. United States, 395 U.S. 147, 152, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); United States v. Merrick, 459 F.2d 644, 645 (4th Cir. 1972). Since violations of the Migratory Bird Treaty Act are punishable by imprisonment for not more than six months,[5] the crime (a misdemeanor) is regarded as a petty offense, Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); consequently, there is no right to trial by jury.

■ The defendants now raise, however, for the first time, a new basis for their contended right to jury trial. Although not required, to anticipate collateral attack we consider the matter. Cf. McGowan v. Gillenwater, 429 F.2d 586 (4th Cir. 1970). They argue that since five of the thirty-three defendants tried in the court below were under twenty-six, and therefore could possibly receive a sentence under the Federal Youth Corrections Act,[6] that the crime for which they were facing trial was

transformed from a petty to a serious crime thus requiring a jury trial. Since the government tried all defendants jointly, the defendants contend they thereby had a right to trial by jury. We reject this argument for two reasons. First, none of the defendants who have appealed are subject to the Federal Youth Corrections Act, since they were 55, 65, and 51 years of age, respectively. Consequently, they lack standing to raise this issue. The defendants can receive at most a six month's sentence and a $500 fine, either or both. 16 U.S.C. § 707(a). Secondly, no motion on behalf of the defendants for severance was made to attempt to procure a jury trial for those five defendants subject to the Federal Youth Corrections Act. Had they felt themselves prejudiced by the joinder, Rule 14 of the Federal Rules of Criminal Procedure offered them appropriate relief.

■ The defendants finally contend they were convicted of a crime with which they were not charged. Section 10.21(j), as defendants construe it, prohibits both (1) hunting by the aid of baiting, and (2) hunting on or over a baited area. The defendants were charged with the latter but claim, for reasons that follow, that they should have been charged with the former. The hunting area[7] was divided into four contiguous fields separated by, at most, a road and a hedgerow. There is no dispute that a heavy swath of grain placed for bait bisected fields #1, #2, and #3. Since ten hunters, whom the government could not later sort out, were arrested while hunting in field #4, the defendants contend that the government has failed to prove that the defendants were hunting "on or over a baited area."

We are of opinion that this contention also fails since the entire area, compris-

---

5.  16 U.S.C. § 707.

6.  The Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq., authorizes detention for up to six years. The provisions of the Federal Youth Corrections Act are made applicable to young adult offenders (twenty-two to twenty-six years of age) by 18 U.S.C. § 4209.

7.  The hunting area, all cleared land, was variously described at trial as comprising 35 to 40 acres according to one witness, and 50 to 75 acres according to another.

ing all four fields, should properly be regarded as a "baited area." As the Ninth Circuit observed in Cerritos Gun Club v. Hall, 96 F.2d 620, 624 (9th Cir. 1938),

> "Wherever the grain is placed on the preserves the wind will create lines of birds' flight, to and from it, which will aid the slaughter from blinds located for the purpose."

In the instant case, doves were observed on the day of the hunt encircling the entire area, including what the defendants describe as field #4. Consequently, all four fields constituted a "baited area," and it makes no difference in which of the four fields defendants were shooting.

Accordingly, the judgment of the district court is

Affirmed.