UNITED STATES of America

v.

**Wilbert Jake ARDOIN.**

UNITED STATES of America

v.

**Francis FORET.**

UNITED STATES of America

v.

**Joseph R. MONIER.**

Civ. A. Nos. 76–476, 76–477 and 76–486.

United States District Court,
W. D. Louisiana,
Opelousas Division.

Jan. 18, 1977.

Donald E. Walter, U. S. Atty., George H. Mills, Jr., Asst. U. S. Atty., Shreveport, La., for plaintiff.

Paul C. Tate, Tate & Tate, Mamou, La., for Ardoin & Foret.

J. Clyde Fontenot, Fontenot & Mitchell, Ville Platte, La., for Monier.

## OPINION

NAUMAN S. SCOTT, Chief Judge:

The three defendants herein are charged with violations of the Migratory Bird Treaty Act, specifically Sections 703, 704 and 707 of 16 United States Code, and a regulation promulgated thereunder, 50 C.F.R. § 20.21(i).[1] They were tried by the court on November 1, 1976 and December 13, 1976. After consideration of the evidence and the detailed memoranda filed by all counsel, and for the reasons which follow, we find all three defendants guilty as charged.

On December 8, 1975 Frank Sims, Special Agent with the United States Fish & Wildlife Service, and Art Brazda, a flyway biolo-

1. 16 U.S.C. § 703. "Unless and except as permitted by regulations made as hereinafter provided in Section 703 to 711 of this title, it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, or kill, . . . any migratory bird . . . included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds concluded August 16, 1916 (39 Stat. 1702), the United States and the United Mexican States for the protection of migratory birds and game mammals concluded February 7, 1936, and the United States and the Government of Japan for the protection of migratory birds and birds in danger of extinction, and their environment concluded March 4, 1972."

16 U.S.C. § 704. "Subject to the provisions and in order to carry out the purposes of the conventions, referred to in section 703 of this title, the Secretary of the Interior is authorized and directed, from time to time, having due regard to the zones of temperature and to the distribution, abundance, economic value, breeding habits, and times and lines of migratory flight of such birds, to determine when, to what extent, if at all, and by what means, it is compatible with the terms of the conventions to allow hunting . . . of any such bird . . . and to adopt suitable regulations permitting and governing the same, in accordance with such determinations, which regulations shall become effective when approved by the President."

16 U.S.C. § 707(a). "Except as otherwise provided in this section, any person, association, partnership, or corporation who shall violate any provisions of said conventions or of sections 703 to 711 of this title, or who shall violate or fail to comply with any regulation made pursuant to said sections shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $500 or be imprisoned not more than six months, or both."

50 C.F.R. § 20.21. "Migratory birds on which open season are prescribed in this part may be taken by any method except those prohibited in this section. No person shall take migratory gamebirds: (i) by the aid of baiting, or on or over any baited area. As used in this paragraph, 'baiting' shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked or unshucked corn, wheat or other grain, salt or other feed so as to constitute for such birds a lure, attraction or enticement to, on or over any area where hunters are attempting to take them; and 'baited area' *means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered*; and such area shall remain a baited area for ten days following complete removal of all such corn, wheat or other grain, salt or other feed. However, nothing in this paragraph shall prohibit: (1) the taking of all migratory gamebirds, including water fowl, on or over standing crops, flooded standing crops (including aquatics), flooded harvested crop lands, grain crops properly shucked on the field where grown, or grains found scattered solely as result of normal agricultural planning or harvesting; and (2) the taking of all migratory gamebirds, except water fowl, on or over any lands where shelled, shucked, or unshucked corn, wheat or other grain, salt or other feed has been distributed or scattered as a result of bona fide agricultural operations or procedures, or as a result of manipulation of a crop or other feed on the land where grown for wildlife management purposes: provided that manipulation for wildlife management purposes does not include the distributing or scattering of grain or other feed once it has been removed or stored on the field where grown." (Emphasis added).

gist and with the United States Fish & Wildlife Service, conducted an aerial reconnaissance of Miller's Lake. The lake is a man-made body of water and is located in Evangeline Parish. Parts of Miller's Lake are quite marsh-like, and in that area numerous duck blinds are located. From the air the agents observed, in areas later identified as the "Buckshot" and "Black" duck blinds, "yellow spots" alleged to be specific deposits of bait. The Government has introduced into evidence aerial photographs of Miller's Lake, taken on December 8, 1975. Agents Sims and Brazda have identified bait in the lake, which appears as yellowish spots in the photographs. On December 11, 1975, three days after the flight over Miller's Lake, Agent Sims, with several other wildlife agents, returned to Miller's Lake to check for possible violations of federal game laws. On that occasion, Agent Sims spoke with Mr. Monier, who was hunting in "Black" blind, and Messrs. Ardoin and Foret, who were hunting in "Buckshot" blind. The testimony indicates that Agent Sims discovered rice in the area immediately adjacent to "Buckshot" blind and that he showed the rice to Messrs. Ardoin and Foret. Although some of the yellow spots might have been clay bottom as suggested by witness Curole, we find that at least some of them were specific deposits of bait and that much of the bait had been consumed by fowl during the three days prior to December 11. Although testimony indicates that Agent Sims discovered rice in the channel between "Buckshot" and "Black" blinds, on December 11, 1975 there was no direct evidence of bait immediately adjacent to "Black" blind on the date in question.

With respect to defendants Ardoin and Foret, the Government has proved that they were hunting and based on aerial and ground observation, the presence of bait. With respect to defendant Monier, the Government has proved that he was hunting in a duck blind located within 300 yards of bait, and one which, on the earlier aerial reconnaissance of Miller's Lake, appeared to be baited. Granting that there was no bait found in Monier's pond on December 11,

1975, we find that ducks had been attracted to that pond by the bait which had been consumed through the previous three days and by the bait in the "Buckshot" pond, part of which was still in evidence on that date. Monier was, therefore, hunting in a baited area.

■ In order to establish the offense of hunting with the aid of bait, 16 U.S.C. §§ 703, 704, 707(a), 50 C.F.R. § 20.21, it is not incumbent upon the Government to prove "intent" or "scienter". *U. S. v. Ireland,* 493 F.2d 1208 (4th Cir. 1973); *U. S. v. Tarmon,* 227 F.Supp. 480 (D.C.Md.1964); *U. S. v. Schultze,* 28 F.Supp. 234 (W.D.Ky. 1939); *U. S. v. Reese,* 27 F.Supp. 833, 834 (W.D.Tenn.1939). The federal regulation involved here specifically exempts from its ambit bait present due to normal agricultural conditions, 20 C.F.R. § 20.21. We find no evidence that the bait discussed here is included in that exception.

■ The defendants complain that what was observed from the air to be "massive" baiting has been verified by the introduction into evidence of only a handful of rice. In *U. S. v. Ireland,* 493 F.2d 1208 (4th Cir. 1973), the court noted, "Nor is there any question that the statutory requirement that the area be baited was satisfied, since it was undisputed that the federal agent found approximately *eighteen grains* of corn in near proximity." At p. 1209.

The case of *U. S. v. Olesen,* 196 F.Supp. 688 (S.D.Cal.1961), relied upon by the defense, does not support the proposition that a baited area extends no more than 200 yards from the actual location of the bait. Rather, the court there was concerned with reconciling a California regulation directed to "relieving widespread waterfowl depredation of agricultural crops" with the purposes of the Migratory Bird Treaty Act to protect migratory wild fowl. At pp. 689–690. And "baited area" has been interpreted very broadly. In *U. S. v. Jarman,* 491 F.2d 764 (4th Cir. 1974), where testimony indicated that "the hunting area, all cleared land, was variously described at trial as comprising 35 to 40 acres according to one

witness, and 50 to 75 acres according to another", the court found " . . . the entire area, comprising all four *fields,* should properly be regarded as a 'baited area.' " At pp. 767–768. (Emphasis ours).[2] While we decline to follow the suggestion of the defense that "baited area" be defined very narrowly, and that of the Government that "baited area" be defined very broadly, we do specifically find that under the facts herein defendant Monier was hunting in a baited area. *U. S. v. Jarman,* 491 F.2d 764, 768 (4th Cir. 1974); *Koop v. U. S.,* 296 F.2d 53 (8th Cir. 1961); *Clemons v. U. S.,* 245 F.2d 298, 301 (6th Cir. 1957) distance involved in excess of 200 yards; *Cerritos Gun Club v. Hall,* 96 F.2d 620, 624, 629 (9th Cir. 1938); *U. S. v. Olesen,* 196 F.Supp. 688 (S.D.Cal.1961).

Defendants will be sentenced in Alexandria, Louisiana, on Thursday, February 17, 1977 at 1:30 o'clock P.M.

---

**2.** Compare *U. S. v. Jarman,* 491 F.2d 764 (4th Cir. 1974), with *Allen v. Merovka,* 382 F.2d 589 (10th Cir. 1967) and *U. S. v. Bryson,* 414 F.Supp. 1068 (D.Del.1976). *Bryson* relies on the holding of *Allen,* which is ostensibly based on *Clemons v. U. S.,* 245 F.2d 298 (6th Cir. 1957). *Clemons* and *Allen* are easily distinguishable, and we specifically decline to follow the rationale of *Bryson.*