POLITZ, Circuit Judge,
Dissenting:
I must respectfully dissent.
*290 In affirming the convictions of these defendants, the majority has abandoned De-lahoussaye’ s holding and guiding principle: that the “should have known” form of scienter is a necessary element of the offense of hunting over a baited field. Indeed, the phrase “should have known” is conspicuously absent from the panel opinion.
Exactly what a hunter should know is not clear. Without doubt, the standard requires less than actual knowledge. “ ‘Knew[1] and ‘did not know but should have known’ are different. One refers to actual and the other to imputed knowledge— which is to say no knowledge, accompanied by circumstances that lead the legal system to treat ignorance the way it treats knowledge.” [1] One circumstance in which the law equates ignorance with knowledge is when the defendant takes affirmative steps to shield himself from that knowledge.[2] In such cases, the defendant is charged with knowing what he deliberately has prevented himself from learning. De-lahoussaye does not address this situation, and indeed the government has made no such allegation against the appellants in the case at bar. Another such circumstance arises when the defendant is under a duty to make a reasonable inquiry, but has failed to do so, and knowledge of the actual facts would have been obtainable by such an inquiry. In these cases, unlike the deliberate ignorance cases, the defendant is not charged with having knowledge but is nonetheless criminally liable for having the less culpable mental state of negligence.[3] Such an instance might arise either because the defendant has knowledge of circumstances that ordinarily would lead a prudent person to conduct an investigation, or because the law creates such a duty.[4] Again, the government does not allege the former circumstance. The prosecution does not suggest that any of the defendants were aware of facts that should *291 have made them suspect the presence of bait or made them aware of the need to investigate further. Instead, the government insists, and the majority holds, that Delahoussaye and Sylvester impose om every hunter a legal duty to inspect the entire area hunted, even if the hunter has no reason to suspect that bait might be present. I cannot agree that Delahous-saye, Sylvester, or right reason supports the imposition of such a duty.
In drawing its conclusions, the majority relies on the following language from De-lahoussaye:
We also conclude that [at] a minimum the bait or the callers must have been so situated that their presence could reasonably have been ascertained by a hunter properly wishing to check the area of his activity for illegal devices.[5]
Far from imposing a universal duty to inspect, I understand this passage to limit the scope of the hunter’s criminal liability. To be sure, the hunters in Delahoussaye were under a duty to inspect their hunting area, but the duty arose because they had reason to suspect that their hunting area was baited. They were hunting less than 300 yards from calling live decoys and piles of cracked corn, “with ducks flying directly over [their] blind to these enticements.” [6] The above-cited passage makes clear, however, that the hunters would not have been liable under § 703 if the bait and callers had been positioned where they could not have been found during a reasonable inspection. This much is evident from the court’s use of the phrase “at a minimum.” I understand that passage to state the rather obvious point that we will not say the hunter “should have known” that which he could not discover. In fact, the Delahoussaye court went on to explain that “there could be no justice” in convicting one who has been barred by a property line from ascertaining that birds were being pulled over him by bait hidden from view.
As the majority notes, the Delahoussaye court rejected actual guilty knowledge as the level of scienter in order to preserve the “incentive for the hunter to clear the area, a precaution which can reasonably be required.” At best, it is ambiguous as to when that incentive exists. I am persuaded that Judge Gee intended to preserve the incentive for the hunter to clear the area under circumstances where he should have known that bait might be present. This reading is most consistent with the should have known standard' announced earlier in the opinion and would, of course, have been undermined if the court had adopted a requirement of actual knowledge. Others, including the majority, believe that Judge Gee was referring to the hunter’s incentive to inspect under all circumstances. Given this ambiguity, the most that can be said of Delahoussaye is that it left the door open for later cases to impose a duty to inspect and to define its parameters.
Judge Gee had an opportunity to revisit this issue ten years later in his writings in Sylvester. He acknowledged that his opinion in Delahoussaye was “[u]nique among the Circuits” in that it did not apply a strict liability standard. Perhaps for this reason, and perhaps because the Congress recently had expressed its preference for a strict liability standard under § 703,[7] Judge Gee moved our standard closer to strict liability by reading an inspection requirement into Delahoussaye. He stopped short of strict liability, however, by requiring only a minimal inspection. The district court in Sylvester had concluded that the hunters traversed close to the baited area and that they could have discovered the *292 bait with “little effort” or a “zig-zag” inspection. Judge Gee agreed, stating that Delahoussaye requires hunters to make “some effort” to detect bait.
Neither Delahoussaye nor Sylvester can fairly be read to impose a duty to inspect more than the area around a hunting position and the path the hunter traversed to get there. Although each of the appellants conceded he had not conducted an inspection, the essential question herein is not whether such an inspection was made, but whether such an inspection would have revealed verboten bait. Clearly this is not the case for the majority of the appellants, who were never within 50 yards of any of the areas containing corn. Even if they had expended “some effort” or had undertaken a “zig-zag” inspection, whatever that is, it is not likely that they would have discovered the distant minimal amount of chopped corn.[8]
The majority reads an even greater requirement into Delahoussaye by redefining the scope of the required inspection in terms of reasonableness. My principal objection to this approach is that it is impracticable. The majority has failed to give hunters dedicated to legal hunting any guidance as to the scope of a reasonable inspection. Is a person invited to hunt at the King Ranch in Texas liable for grain that might exist anywhere on the nearly one million acres the ranch is reported to include? How much of the ranch is it “reasonable” to inspect? The geographic scope of liability cannot reasonably be defined with reference to § 703’s requirement that the hunting take place over a “baited area,” because the “baited area” includes the entire area over which the bait might exercise an attraction[9] and can extend miles away from the bait. In fact, “baited area” has been held to include areas where there is no bait at all.[10]
The majority seems to suggest that the reasonableness of an inspection is an issue of fact that can be resolved by trial judges, taking into account such factors as weather conditions, available daylight, and the condition of the hunted area. This approach is similar to the manner in which we have defined “baited area,” which, as Judge Gee noted, “is not subject to exact definition and may expand or contract with changes of wind and weather, but hunters must make many such judgments as these in order to hunt at all.”[11] Unlike the determination of the area over which bait might exercise an attraction, however, the determination as to how a court might define a legally imposed duty to inspect a field is not one that would permit me to say so glibly “hunters must make many such judgments as these in order to hunt at all.” This underscores the circularity in the majority’s resolution. Sylvester rejected reasonableness as the ultimate determinant as to whether a hunter must conduct an inspection. Instead, it imposed a duty to inspect as a matter of administrative convenience. The majority now defines this legally imposed duty in terms of what the reasonable hunter would do under the circumstances. But the reasonable hunter *293 wants only to comply with the law; he has no reason to inspect for bait apart from his legally imposed duty to do so.[12] Indeed, if conducting such an inspection was something a reasonable hunter did, our opinions would not have to impose a duty to do it. This problem is exacerbated by the fact that in the 22 years since Delahoussaye was decided, this court and its subordinate courts have not once considered whether an inspection undertaken by a hunter was “reasonable.”
By extending the duty to inspect from the minimal inspection required in Sylvester to the broader inspection required in this case, the majority has virtually eclipsed the should have known standard and moved this circuit very close to the former strict liability, standard that applied in several of the other circuits. As I understand the majority’s approach, a hunter is strictly liable for any ascertainable amounts of illegal bait that might .exist in a largely undefined area. Although it is too late for these appellants, Congress recently has provided relief under § 704 by adopting a “reasonably should have known” form of scienter similar to the one previously applied in this circuit.[13] Because of this fortunate legislative intervention, what I view as the unworkable standard in the panel opinion will have little opportunity to work mischief to responsible, well-intentioned hunters. That is a consummation much to be desired.

. Contract Courier Services, Inc. v. Research and Special Programs Admin., 924 F.2d 112 (7th Cir.1991).

. United States v. Restrepo-Granda, 575 F.2d 524, 528 (5th Cir.) cert. denied, 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978).

. United States v. Bader, 956 F.2d 708, 710 (7th Cir.1992) (" 'Should have known’ is closer to negligence than knowledge.”).

. Contract Courier Services, Inc., 924 F.2d 112. Our prior cases have not held that a duty to inspect is inherent in the should have known standard. In United States v. Garrett, 984 F.2d 1402 (5th Cir.1993), we applied the "should have known” standard to the prohibition under the Federal Aviation Act, 49 U.S.C. § 1472(1), against attempting to board an aircraft while carrying a concealed dangerous weapon. Regina Kay Garrett was stopped by New Orleans airport security while attempting to board an airplane when the security guard monitoring the X-ray scanner noticed a dark mass in her hand bag. She consented to a search and a hand gun was discovered. Garrett said she had forgotten the gun was in her purse and asserted that she could not be convicted under § 1472(1) without proof she had actual knowledge that the gun was in her purse. We concluded that the statute did not require actual knowledge, and instead applied the "should have known” standard, concluding that Garrett's case was “most akin to Delahoussaye."
We found that there was sufficient evidence to support the magistrate's finding that Garrett should have known she was carrying a gun when attempting to board the airplane. This evidence consisted of facts that would have caused a reasonable person to inspect their own hand bag. Garrett acknowledged that she had placed the gun in the bag herself and had simply forgotten about it. She also admitted that she knew at the time that she previously had carried the gun in that bag. Further, there were two large signs in the area of the security checkpoint that should have reminded Garrett of the need to check her bag. The Garrett court did not read a duty to inspect into Delahoussaye’s "should have known” standard. If it had, there would have been no need to discuss the foregoing evidence because she could have been found guilty based entirely on her failure to know the contents of her purse.
See also, United States v. King, 1992 WL 73358 (E.D.La. April 2, 1992) (finding defendant should have known bait was present, not because he should have inspected the area, but because he was 400 yards from a plainly visible grain elevator, the whole area reeked of grain, and the birds had begun flying in patterns consistent with bait influence).

. Delahoussaye, 573 F.2d at 912.

. Delahoussaye, 573 F.2d at 912.

. S.Rep. No. 445, 99th Cong., 2d Sess., reprinted in 1986 U.S.C.C.A.N. 6113, 6128 ("Nothing in this amendment is intended to alter the strict liability’ standard for misdemeanor prosecutions under 16 U.S.C. § 707(a), a standard which has been upheld in many Federal court decisions”).

.Witnesses estimated that the entire field contained a total of about five pounds of corn, or "enough to fill a bucket.” I also note that the testimony of the surveyors, upon which the magistrate relied heavily in concluding that the corn was "readily ascertainable,” was that they did not see the corn until after they had stepped out of their trucks and were standing directly on top of it looking down at the ground. The only witness who testified that the corn was visible from any distance was Officer Lane Ball, who, rather than actually discovering the corn from a distance of 30 yards, estimated that he could have seen the corn from 30 yards after he already knew it was there. In fact, several of the defendants testified that Officer Don Foreman, the conservation agent who happened upon the corn, had difficulty locating it again when the defendants asked to see it.

. Delahoussaye, 573 F.2d at 912.

. United States v. Ardoin, 431 F.Supp. 493 (W.D.La.1977) (holding that "baited area” included pond neighboring a lake where there had been illegal bait prior to the day of the hunt).

. Delahoussaye, 573 F.2d at 912.

. While reasonable hunters typically inspect their hunting areas for their own safety and the safety of others, the panel opinion makes it clear that the duty to clear the area of bait is broader than that. Each of the appellants, while acknowledging that he had not looked specifically for bait, testified that he inspected the ground on the way to his hunting position to make sure the field was safe. The fact that each of these experienced hunters believed that no more than a cursory inspection of the field was necessary in order to guard their own well-being belies the notion that an exhaustive inspection of the entire area is somehow inherently reasonable.

. 16 U.S.C. § 704 now reads:
(b) It shall be unlawful to—
(1) take any migratory game bird by the aid of baiting or on or over, any baited area, if the person knows or reasonably should know that the area is a baited area.