**UNITED STATES v. CLUCAS et al.**

**Cr. Nos. 8630, 8631.**

District Court, E. D. Virginia.

July 22, 1943.

Russell T. Bradford, Asst. U. S. Atty., of Norfolk, Va., for the United States.

J. Louis Broudy, of Norfolk, Va., for defendant.

WYCHE, District Judge.

These cases arise out of two informations filed by the United States Attorney against the defendants, Clucas and Tucker, alleging a violation of the Migratory Bird Treaty Act of July 3, 1918, 40 Stat. 755, as amended June 20, 1936, 49 Stat. 1555, 16 U.S.C.A. §§ 703–711. The defendants pleaded not guilty and waived a jury. By consent of the parties and their attorneys, the trial of the two informations was consolidated.

It is charged that the defendants on the 6th day of January, 1943, killed more than ten wild ducks, migratory game birds, included within the terms of the convention for the protection of migratory birds, contrary to the form of the statutes and the regulations adopted pursuant thereto.

The evidence of the prosecution and defendants, except in one particular, was free from conflict.

The defendant, Clucas, a resident of the City of Norfolk, owned a certain outfit used in hunting ducks, consisting of boats, blinds, and decoys, which he kept in Princess Anne County, Virginia. He gave the witness, Bright, a one-half interest in the outfit, the consideration being that he, Bright, keep the outfit in good condition and have same accessible to the defendant, Clucas, when he desired to hunt, and that he assist him in duck hunting during the season; the outfit to be available to Bright for his personal use and as a guide for hire. On the date alleged in the informations, the 6th day of January, 1943, the defendants, Clucas and Tucker, met the witness, Bright, and the witness, Freeman, and proceeded to the place where the blinds were kept to hunt ducks from the outfit. Twenty-six ducks in all were killed by the members of the party. They were put in a bag and placed by the defendant, Clucas, in the trunk compartment of the defendant, Tucker's, automobile. The evidence discloses further that the witness, Freeman, shot ducks from the outfit for about one hour, killing some six or eight. He received no compensation, although he accompanied the witness, Bright, in assisting the defendants, Clucas and Tucker, in retrieving and gathering the ducks killed by them. The witness, Bright, shot no ducks from the outfit. At about three-thirty, P. M., of the same day, the defendant, Tucker's, automobile was stopped by a state and a government game warden. The car was searched and the twenty-six freshly killed ducks found in the trunk compartment were seized and thereafter put in cold storage to await the outcome of these cases. The game wardens testified that the defendant, Clucas, admitted in the presence of the other parties

that they had killed more than the "bag", meaning thereby that they had killed more than ten ducks allowed for each person. This was denied by the defendant, Clucas, and the other persons forming the party who were within hearing distance. Defendant Tucker testified that he left the blind for about an hour to permit the witness, Freeman, to shoot, and that he, Tucker, accompanied Bright in assisting the defendant, Clucas, and the witness Freeman when they were shooting. The evidence discloses that the game wardens and the defendants bear an excellent reputation.

I am of the opinion that Regulation 5 is applicable to the issues here involved. The pertinent excerpt reads as follows:

"Regulation 5. Daily Bag and Possession Limits on Certain Migratory Game Birds.

"A person may take in any one day during the open seasons prescribed therefor in regulation 4 of these regulations not to exceed the following numbers of migratory game birds, which numbers shall include all birds taken by any other person who for hire accompanies or assists him in taking such birds; and when so taken these may be possessed in the numbers hereinafter specified, except that no person on the opening day of the season may possess any migratory game birds in excess of the daily limits herein prescribed.

"Ducks. Ten in the aggregate of all kinds including in such limit not more than 1 wood duck, or more than 3 singly or in the aggregate of redheads and buffleheads; and any person at any one time may possess not more than 20 ducks in the aggregate of all kinds but not more than 1 wood duck, nor more than 6 of either or both of redheads or buffleheads."

In view of the fact that January 6, 1943, was not the first day of the season the possession of twenty-six ducks by the two defendants did not constitute a violation of the provisions of Regulation 5, quoted above. The possession being legal, the burden of proof did not shift to the defendants. The government contends, however, that the ducks were freshly killed and that the evidence sustains their position that the two witnesses accompanying the defendants and assisting them in the "taking" or "killing" the birds were hired assistants and for that reason the "killing" or "taking" of more than twenty ducks by the two defendants constituted a violation of the aforesaid regulation. The defendants on the other hand, contend that the agreement of the defendant, Clucas, with the witness, Bright, giving him a one-half interest in the outfit in consideration of his assistance did not constitute a hiring within the meaning of said regulation, but was a joint adventure.

The Court is of the opinion that it is not necessary in the determination of these cases to pass on the question of the joint adventure as a hiring within the meaning of the regulation. It will be observed from the undisputed evidence of the witness, Freeman, that he received no consideration whatsoever for his assistance to the defendants and that he was the person that killed some six or eight ducks while the defendant, Tucker, was assisting the witness Bright. There is no dispute about the fact that he was duly licensed to hunt migratory birds, and that he had a right to kill or take ten birds during any one day in the open season. He had the right to give the birds to the defendants if he so chose. The evidence, however, discloses the fact that the four persons involved had agreed to meet at a certain store where they customarily stopped and divided the birds between them.

Regulation 2 adopted pursuant to the said Act defines the term "take" to mean "hunt, kill, or capture, or attempt to hunt, kill, or capture". The Secretary of the Interior, in using the word "take" in Regulation 5, did so advisedly. It is a matter of common knowledge that hunters are frequently in dispute as to which one shot or killed the greater number of birds and that sometimes two sportsmen feel that each shot the same bird.

The burden of proof beyond a reasonable doubt resting upon the government, I am of the opinion that the Government has failed to sustain this burden and therefore find the defendants not guilty of the offenses charged in the informations filed against them.

It follows that the birds seized by the game wardens were not killed or taken contrary to the "Migratory Bird Treaty Act" or any regulation made pursuant thereto as provided by Section 706 of said Act and it is therefore ordered that the said birds be returned to the defendants, but not to be kept in their possession for a period longer than thirty days from the date of this order.