**UNITED STATES of America,**
Plaintiff,

v.

**Kay OLESEN, Alamo Duck Club,**
Defendants.

Crim. No. 30012.

United States District Court
S. D. California, S. D.

Aug. 10, 1961.

Francis C. Whelan, U. S. Atty., Los Angeles, Cal., Paul Hofflund, Asst. U. S. Atty. in Charge, San Diego, Cal., for the United States.

Maynard B. Henry, Los Angeles, Cal., for defendants.

Stanley Mosk, Atty. Gen., of California, Ralph W. Scott, Deputy Atty. Gen., amici curiae.

KUNZEL, District Judge.

Defendant Kay Olesen is charged with taking and shooting ducks by aid of baiting and over a baited area in violation of regulations issued by the Secretary of the Interior pursuant to the Migratory Bird Treaty Act, 16 U.S.C.A. § 703 et seq., the regulations providing in part that migratory birds may not be taken by "aid of baiting, or on or over any baited area." 50 C.F.R. § 10.3(b) (9). Defendant has pleaded "not guilty." The parties have stipulated "that the said Defendant Kay Olesen be tried upon the facts as set forth in the Briefs heretofore filed" and that "Defendant Kay Olesen hunted and took migratory wildfowl only at a distance greater removed than 200 yards from the approved feeding area."

From the briefs on file it appears that defendant Kay Olesen was the manager of the co-defendant Alamo Duck Club which is located in Imperial Valley, California, and which consists of about 160 acres, portions of which were flooded.

The club had a permit to feed in accordance with regulations promulgated by the Department of Fish and Game of the State of California, as authorized by Section 3806 of the California Fish and Game Code. Under this permit feed had been placed in the feeding area on the day prior to the day of the shooting. The California statute states that it was enacted "[i]n order to aid in relieving widespread waterfowl depredation of agricultural crops." The statute was enacted and the regulations were adopted in 1951.

Federal regulations prohibit any feeding where such feeding constitutes for birds "a lure, attraction or enticement to, on or over any area where hunters are attempting to take them." The California regulation, 14 Cal.Adm.Code § 508(c) (4), prohibits shooting within 200 yards of a permitted feeding area; and § 508(b) (2) of the code provides in part that,

"[i]f, in the opinion of the Department, shooting blinds or stands, either on applicant's property or the immediately adjacent property, are so placed in relation to the feeding area or areas that migratory wildfowl may pass within shooting range of the hunter in order to reach the feeding area, the Department may refuse to issue the applicant a migratory waterfowl feeding permit, or if issued, to cancel a permit where the intent of this clause is not being observed."

Defendant's brief further states that the club area was regularly inspected during the season on shooting and non-shooting days by State game wardens who found no violation of either federal or State regulations and that on the date of shooting there was no feed on the property. The government's case against Olesen depends upon a theory supported by expert testimony that once a feeding area is established ducks will return to the area even though there is no feed present and that no amount of shooting will drive them away.

It must be assumed that the State permit would not have been issued, or the permit would have been cancelled, if, in the opinion of the State wardens, the feeding area was in such a location that the ducks would have had to fly over the blinds to gain access to it. In the brief of amici curiae on behalf of the State of California, it is pointed out that the State had, at the time of the offense, 270 game wardens deputized as federal wardens but not paid by the federal government, while the federal government had only about eight to ten paid wardens; and that enforcement of game regulations would be a farce if left only to paid Federal wardens.

Both the defendant and amici curiae in their briefs contend that the federal regulation is so uncertain that it does not comply with constitutional requirements of due process in that it fails to define what is meant by the term "baited area" and that the vague definition leaves it to the judgment of each individual warden to determine when to make an arrest, to each individual United States Attorney to determine when to prosecute, and to each individual judge to determine whether there has been a violation. They further state that "area" may constitute the whole Imperial Valley or it may be limited to 500 or 700 yards. While there is merit to the defendant's contentions, it is, in view of the basis of this decision, unnecessary to decide the question. However, this contention has been decided adversely to the position of defendant and amici curiae by the United States Court of Appeals for the Sixth Circuit in Clemons v. United States, 1957, 245 F.2d 298, 302. But in that case the defendant admitted that feed was used to "lure the birds" and the court relied on evidence "that the flight pattern of the ducks led them from the feeding holes to and over the blinds." 245 F.2d 302. The Seventh Circuit, in Cochrane v. United States, 1937, 92 F.2d 623, 628, certiorari denied 1938, 303 U.S. 636, 58 S.Ct. 522, 82 L.Ed. 1097, declined to define the limits within which the regulation was applicable stating that "the facts * * * fall clearly within it on any reasonable construction of it." The facts to which the court referred were that corn was dropped into the water about 150 yards from the blinds, and that "the corn floated in and about wooden decoys which were placed a short distance in front of the blinds." The court remarked that "it is not the feeding of birds that is condemned but rather the feeding of them in such a way as to lure them close to a blind wherein hunters are lodged, that is prohibited." In the Ninth Circuit case of Carty v. United States, 1951, 190 F.2d 99, the defendants were tried and convicted upon an "information charging that they did take, hunt and kill * * * birds over baited ponds, and areas by use of shelled grain as a lure." The court held that an instruction was erroneous which, in substance, advised the jury that the regulations were violated if there were baiting before the season to keep the birds in the area. The court said the charge could not be established "by proof of a baiting before season if there were no shelled grain in the area contemporaneously with the shooting." This case throws some doubt upon the ability of the government to sustain its theory in the instant case.

■ The brief of amici curiae states that since the enactment of the California statutes and regulations in 1951, "we know of no instance where the federal government has made an arrest where the shooting occurred within 200 yards or more of the feeding pond." It is conceded by all parties, as they must, that the federal regulations could prohibit all shooting or feeding or could fix a definite distance from a shooting blind where no feeding could take place. However, having failed to take such steps and having failed to define "area", and it appearing that the State regulations are reasonable for the protection of game, the federal regulation must be held to be in *pari materia* with the State regulation. Where "area" is defined by the State regulation it must be held to have been adopted by the Secretary of Interior

where he has continued the federal regulation with knowledge of the existence of the State regulation.

■■ It has been said by the Supreme Court that the " * * * Constitution presupposes the continued existence of the states functioning in coordination with the national government." Penn Dairies, Inc. v. Milk Control Commission, 1943, 318 U.S. 261, 270, 63 S.Ct. 617, 621, 87 L.Ed. 748. In view of the fact that there is no evidence set out in the government's brief which would allow for a finding that there has been a violation of the federal regulations as modified by the California regulations by defendant Olesen, he must be found not guilty of the charge.