**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Louis DELAHOUSSAYE, David Lemoyne Knerien and Robert Lee Richard, Defendants-Appellants.**

No. 77–5475.

United States Court of Appeals, Fifth Circuit.

May 26, 1978.

Rehearing Denied June 15, 1978.

James A. Wysocki, Steven M. Koenig, New Orleans, La., for defendants-appellants.

Edward L. Shaheen, U. S. Atty., D. H. Perkins, Jr., George H. Mills, Jr., Asst. U. S. Attys., Shreveport, La., for plaintiff-appellee.

Before MORGAN and GEE, Circuit Judges, and KING,* District Judge.

GEE, Circuit Judge:

Appellants were convicted of violating two federal regulations promulgated by the Secretary of the Interior pursuant to statutory authority conferred on him by the Migratory Bird Treaty Act, 16 U.S.C. § 703 *et seq.* These are designed to conserve migratory game, such as the ducks here concerned, by regulating the means employed in taking them. The regulations here in point [1] generally forbid the use of live decoys (callers) and the use of grain or the

---

\* United States District Judge of the Southern District of Florida, sitting by designation.

1. 50 C.F.R. Subpart C, 20.21(f) and (i).

like as artificial bait. They read, in pertinent part:

No person shall take migratory game birds:

(f) By the use or aid of live birds as decoys; although not limited to, it shall be a violation of this paragraph for any person to take migratory waterfowl on an area where tame or captive live ducks or geese are present . . ..

(i) By the aid of baiting, or on or over any baited area. As used in this paragraph, "baiting" shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and "baited area" means any area where shelled, shucked, or unshucked corn, wheat, or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered . . ..

On sufficient evidence, the magistrate found that at the time of the offenses charged, appellants were hunting from a duck blind located less than 300 yards from calling live decoys and cracked corn, with ducks flying directly over the blind to these enticements. He found as well that appellants either knew (Knerien and Richard) or should have known (Delahoussaye) of the presence of the callers and should all have seen cracked corn located in piles along the levee they traversed to get to the blind. On these findings, he concluded that the blind was in a baited area and that all appellants should have known it was.

Appellants' primary attack on their convictions contends that the term "area" used in the regulations is unconstitutionally vague and uncertain. Several other grounds for reversal are also brought forward, which we will notice in due course, but one which interlocks with the first is the question of scienter. We conclude that the term "area" is not, as used in these regulations, unconstitutionally vague and that a minimum form of scienter—the "should have known" form—is a necessary element of the offense.

■ The "area" intended by the quoted regulations is rather plainly that within and over which the bait or the callers exercise an attraction. Since these are forbidden means of taking ducks, the area within which but for them ducks would not be is one forbidden to hunters. It is true that such an area is not subject to exact definition and may expand or contract with changes of wind and weather, but hunters must make many such judgments as these in order to hunt at all. Any other definition would be ineffective to deny the advantage of the prohibited means to hunters inclined to seek it, and we think that, in prohibiting hunting "by the aid" of these means, the regulations plainly call for such a definition in terms comprehensible to the average reader. It is also true that there will be dubious zones at the area's edges, but this circumstance requires no more than that hunters resist the temptation to sail close to the wind.

■ We also conclude that a minimum the bait or the callers must have been so situated that their presence could reasonably have been ascertained by a hunter properly wishing to check the area of his activity for illegal devices. There could be no justice for example, in convicting one who was barred by a property line from ascertaining that birds were being pulled over him by bait or callers hidden from his view, and we decline to impute such an intent to the regulations. One mallard sounds like another, or even like a duck call, and the fact that a hunter hears quacking next door does not tell him that callers are in use there. The same is true of bait; standing crops attract game quite as well as bait does, and hunting over standing crops is expressly permitted by another portion of the regulations not quoted. If the hunter cannot tell which is the means next door that is pulling birds over him, he cannot justly be penalized. Any other interpretation would simply render criminal convic-

tion an unavoidable occasional consequence of duck hunting and deny the sport to those such as, say, judges who might find such a consequence unacceptable. On the other hand, to require a higher form of scienter— actual guilty knowledge—would render the regulations very hard to enforce and would remove all incentive for the hunter to clear the area, a precaution which can reasonably be required. Such a reading is unnecessary to the regulations' constitutionality, and we reject it. Given the magistrate's findings and conclusions, these observations dispose of appellants' major attacks, that on "area" as vague and that on "should have known" as the standard of scienter.

■ Appellants next contend, relying on the case of *United States v. Olesen*, 196 F.Supp. 688 (S.D.Cal.1961), that to save the regulation from being too vague we should read a 200-yard limit into the word "area." *Olesen* did indeed read in such a limitation but did so under circumstances which have no applicability here. The State of California, where *Olesen* transpired, had its own game laws which prohibited hunting within 200 yards of a feeding area. The district court held that the Secretary of the Interior should be held to have accepted the state law and thus, the court reasoned, the federal and state regulations should be read together as preventing hunting only within 200 yards of bait. Appellants have cited no Louisiana statute regulating duck hunting, and if there were such a statute we would not be inclined to follow the *Olesen* reasoning. The regulation is a national one, founded on a treaty, and should not mean one thing in one state and another elsewhere.

■ Finally, appellants rather half-heartedly attack the informations by which they were prosecuted for vagueness and variance. We conclude that these gave fair notice of the offense charged, ample both to permit a defense and preclude further prosecution and that any variance did not affect appellants' substantial rights. *United States v. Hand*, 497 F.2d 929 (5th Cir. 1974), *adopted en banc*, 516 F.2d 472, 477 (1975). Appellants' convictions are AFFIRMED.