**CALIPATRIA LAND COMPANY, et al., Plaintiffs,**

v.

**Manuel LUJAN, et al., Defendants.**

**No. 90–1185 GT (M).**

United States District Court,
S.D. California.

Nov. 2, 1990.

242

Ronald A. Zumbrun, Robin Lee Rivett, Pacific Legal Foundation, Sacto, Cal., for amicus California Fish & Game.

Mitchell L. Lathrop, Dominic Stephen Ogle Nesbitt, Rebecca D. Hickox, Adams, Duque and Hazeltine, San Diego, Cal., for plaintiffs Ventura County Game, Salton Sea Duck Club, Premium Duck Club, Bruce E. Nott, North Wind Duck Club, Mill Creek Duck Club, Mecca Land & Development, Imperial Duck Club, Honkers Hunting Club, Cottonwood Ranch, Coachella Valley Duck and Calipatria Land Co.

Stephen V Petix, U.S. Dept. of Justice, Office of the U.S. Atty., San Diego, Cal., for defendant Manuel Lujan.

Larry J. Bradfish, James C. Kilbourne, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, D.C., for defendants Manuel Lujan, John Turner and Marvin Plenert.

Stuart B. Schoenburg, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, D.C., for defendants Marvin Plenert and John F. Turner.

M. Reed Hopper, Holliman, Hackard and Taylor, Sacramento, Cal., for amicus California Waterfowl Ass'n.

## ORDER

GORDON THOMPSON, Jr., District Judge.

Plaintiffs's motion for preliminary injunction came on for hearing on October 10, 1990. Mitchell L. Lathrop and Rebecca D. Hickox of Adams, Duque, & Hazeltine appeared on behalf of plaintiffs. Assistant

United States Attorney Stephen Petix, and Larry Bradfish of the US Department of Justice appeared on behalf of Defendants. Having reviewed the pleadings, exhibits, declarations and arguments in favor and in opposition to the motion, the court hereby denies plaintiffs's motion for preliminary injunction.

BACKGROUND

Plaintiffs are partnerships, corporations and individuals who maintain wetland habitats for waterfowl on duck hunting clubs. They bring this suit to enjoin the United States Fish and Wildlife Service (FWS) from enforcing the federal anti-baiting regulation promulgated under the Migratory Bird Treaty Act (MBTA) against any plaintiffs who have complied with the regulations of the California Fish and Game Commission pertaining to the feeding of migratory waterfowl.

The pertinent section of the Federal anti-baiting regulation states that no person shall take migratory game birds:

> (i) By the aid of baiting, or on or over any baited area. As used in this paragraph, "baiting" shall mean placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and "baited area" means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered; and such area shall remain a baited area for 10 days following complete removal of all such corn, wheat or other grain, salt or other feed ...

50 C.F.R. § 20.21(i), Exhibit 18.

There is a long standing disagreement over waterfowl baiting between the FWS, these plaintiffs and others similarly interested. At the center of this conflict is a regulation adopted by the state of California in 1953. This regulation was adopted to prevent crop depredations, and allowed approved applicants to place feed grain for waterfowl on specified acreage. This ostensibly attracted the birds away from the agricultural crops. The feeding licenses in question in this case are those issued to duck hunting clubs.

Under the pertinent California regulation, hunters on the licensed grain feeding clubs were allowed to hunt the ducks from 200 yards back; later amendments extended this limit to 250 yards. Cal.Admin.Code tit. 14, R. 54 § 336(c). FWS policy for many years has been that this California regulation is in conflict with the anti-baiting regulation. In 1961, a FWS baiting violation citation led to a decision by a court of this District, *United States v. Olesen*, 196 F.Supp. 688 (S.D.Cal.1961). The court in that case did not decide the question of whether the federal regulation met constitutional requirements of due process, as this was not the basis of the court's decision. *Id.* at 690. The court determined the California regulation to be *in pari materia* with the Federal regulation, as the Federal regulation did not define the area within which hunting could not occur, and the Secretary of the Interior had not acted to change the federal regulation despite knowledge of the California regulation and its definition of "area" as being 200 yards back from the feed.

Thereafter, in 1974, the FWS concluded that it would nevertheless enforce the Federal anti-baiting regulation since crop depredation had become less of a problem. A group of plaintiffs joined in a suit challenging the planned enforcement of the federal anti-baiting regulations. A voluntary settlement agreement was entered into on October 14, 1975, in which the FWS agreed to enforce the anti-baiting regulation in accordance with the *Olesen* decision, and to conduct a study of the issues pertinent to the regulations in which the California Department of Fish and Game would participate. Under the terms of the agreement, if the FWS determined after reviewing this study that no change in the Federal regulations was necessitated, the Director of the Service "will provide written notice of that fact to [specific] plaintiffs;

and he will provide notice of the date upon which the agreement set forth in paragraph (2) will be terminated." The study contemplated by the settlement agreement was completed by Dr. Leigh H. Frederickson in January 1980.

The Regional Director of the FWS in May, 1988 notified by letter the pertinent parties to the settlement agreement that he had reviewed the Frederickson study and numerous other studies and materials submitted to him, and determined that there would be no change in the federal anti-baiting regulations. The letter stated: "The Service will terminate the current Settlement Agreement at the beginning of the 1990–1991 migratory waterfowl hunting season."

It is this proposed action by the FWS which led to this lawsuit. Plaintiffs seek a preliminary injunction on the following grounds:

1) Defendants have misinterpreted the Migratory Bird Treaty Act and the regulations promulgated pursuant thereto as the California regulations are not in conflict with either the federal act or the federal regulations;

2) Defendants are in violation of the National Environmental Policy Act in that they have failed to prepare an Environmental Impact Statement (EIS) for major federal action significantly affecting the quality of the human environment.

3) Defendants are in violation of the Administrative Procedure Act in that their actions are arbitrary, capricious and an abuse of discretion.

The court will consider each of these arguments in turn.

*Justiciability of the Controversy*

■ Plaintiffs filed their action for declaratory relief pursuant to 28 U.S.C. § 2201. As a threshold matter the court must consider whether the present case is "a case of actual controversy" as required by the statute. A declaratory judgment may be rendered in a case even though the petitioners have not exposed themselves to "actual arrest or prosecution". *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct.

1209, 1215, 39 L.Ed.2d 505 (1974). Although in this case plaintiffs's have not argued their case so as to seek to vindicate constitutional rights, their request for relief presents a no less justiciable controversy than that considered by the Court in *Steffel.*

The controversy over the California and Federal regulations in question is long-standing and specific. Plaintiffs have more than an "imaginary or speculative" fear of prosecution. *Id.* at 459, 94 S.Ct. at 1215. By letter the FWS in August 1990 notified a number of the duck clubs licensed under the feeding program that "the taking of waterfowl in an area where feed has been placed so as to attract them near the hunter is a violation of federal law ..." Although at the hearing on the motion for preliminary injunction the federal government could not articulate precisely at what distance hunting near a baited area would constitute a violation, there is little question in the court's mind that the government intends to enforce its regulation and that this could lead to criminal prosecutions.

It is both in the interest of fairness to the parties and judicial efficiency that a decision be rendered at this time. The court has an ample record to review on the pertinent issues. There is no purpose served by waiting for a hearing on an actual citation for violation of the Federal baiting regulations to decide this controversy.

*Conflict Between the California and Federal Regulations*

■ The court finds that the California statute is in conflict with the Federal regulations and the Federal Act, and that pursuant to the Supremacy Clause the California statute cannot stand. *Missouri v. Holland,* 252 U.S. 416, 433–435, 40 S.Ct. 382, 383–384, 64 L.Ed. 641 (1920).

Plaintiffs argue that this court should follow the reasoning of the court in *Olesen.* Although this court does not have the power to overrule *Olesen,* it finds that it must respectfully disagree with that decision.

■ The Federal regulation specifically prohibits the taking of migratory game birds "by the aid of baiting or on or over any baited area." The court in *Olesen* found that the term "area" in the Federal regulation was vague, and that the state regulation defined the spatial limits of the "baited area" referenced in the federal regulation. The court also concluded that the Secretary of the Interior had in a sense acquiesced to the state regulation, as he had not acted to change or clarify the term "area" in the federal regulation.

The court finds more convincing the argument of the court in *United States v. Manning*, 787 F.2d 431 (8th Cir.1986). The term "baited area" is not subject to precise definition, as the "zone of influence" of the bait will vary based upon factors such as wind and terrain. *Id.* at 438. The court agrees with the *Manning* court that the term "baited area" is as precise as the subject matter permits. *Id.* at 438. *See also United States v. Delahoussaye*, 573 F.2d 910 (5th Cir.1978); *United States v. Chandler*, 753 F.2d 360 (4th Cir.1985).

The setting of an arbitrary line, as in the California regulation, frustrates the purpose of the federal regulation. It cannot be said with certainty that hunting at 250 yards back from the bait is any more or less within the zone of influence of the bait than hunting at 230 yards back. Over the last thirty years the FWS has on numerous occasions made clear its interpretation of the Federal regulation, and informed plaintiffs of its intent to enforce the regulation in the 1990–91 season. As the regulations are in conflict, and the Federal regulation must be supreme, the court must deny plaintiffs's request for injunctive relief.

*Major Federal Action and the National Environmental Policy Act*

■ Plaintiffs contend that the FWS action to enforce the Federal anti-baiting regulation is a major federal action under the National Environmental Policy Act (NEPA), and that the FWS must therefore prepare an environmental impact statement. The court finds that the agency action here does not constitute "major Federal action significantly affecting the quali-ty of the human environment", such that the completion of an environmental impact statement is required. 42 U.S.C. § 4332(C). 40 C.F.R. § 1502.3 The statute requires both that the action be major *and* significantly affect the quality of the human environment. *Simmans v. Grant*, 370 F.Supp. 5, 13 (D.C.Tex.1974).

The regulations promulgated pursuant to this section of the NEPA state that a major federal action does not include "bringing judicial or administrative civil or criminal enforcement actions." 40 C.F.R. § 1508.-22. In this case, the plaintiffs are seeking to enjoin the FWS from enforcing regulations which have been in place for years. There can be no question that the enforcement itself of these regulations at this time is not a major federal action as defined by the regulations promulgated pursuant to NEPA.

Plaintiffs argue that the decision to terminate the settlement agreement was a change in Federal policy, and falls within the definition of a major federal action. While the court finds that the FWS terminated the settlement agreement, and clearly stated so in its correspondence to the plaintiffs and other interested parties, this is not a change in federal policy. On the contrary, the settlement agreement itself makes it quite clear that the FWS policy was against baiting at the outset. Under the settlement agreement, the FWS agreed not to prosecute hunters who violated the Federal anti-baiting regulations (as long they were complying with the California regulations) pending the completion of a scientific study on the issues involved.

Paragraph (9) of the settlement agreement specifically gave the FWS the option to terminate the settlement agreement with proper notice if it decided after a review of the study that the Federal anti-baiting regulations *would not be changed.* In May 1988 the FWS informed the interested parties that it had terminated the agreement, that beginning in 1990 it would enforce the regulations, and that hunting on baited land pursuant to the California regulation may in fact violate the federal regulation.

This was action by the FWS to enforce its regulation, and to maintain its long-standing policy against baiting. Since the court does not agree that the termination of the settlement agreement was a major federal action, it need not reach any determination as to the adequacy of the Environmental Assessment or of the Finding of No Significant Impact.

### Arbitrary and Capricious Agency Action

 Plaintiffs claim that the FWS was arbitrary and capricious in its decision to "terminate the California feeding program." Federal law prohibits agency action which is arbitrary and capricious. 5 U.S.C. § 706(2)(A).

The court cannot find that the FWS action terminates the California feeding program, nor that any action to enforce the regulations and consequently change the California feeding program is arbitrary and capricious. While the effect of enforcement may be to virtually stop hunters from shooting in a baited area, this does not necessarily terminate the California feeding program. Furthermore, a Federal agency could not "terminate" the California feeding program; it is a state, not federal, statute.

The FWS did state in its May 1988 letter to the California Department of Fish and Game that it would work with the Department to "phase out" the existing feeding program in California. The record before the court establishes that the FWS has on numerous occasions offered to help the hunting clubs find alternatives to baiting, including utilization of natural vegetation to attract the waterfowl.

Even if the court liberally construes the plaintiffs's charge that the agencies actions are arbitrary and capricious, it can find no grounds on which to reach this conclusion. Other than those actions discussed above, Plaintiffs do not present any specific actions for the court's review. In their reply to Defendants's sur-response, Plaintiffs assert that the regulation is unconstitutional, but this argument is only a reiteration of the *Olesen* decision. Plaintiffs have not otherwise challenged the regulation itself, or the administrative process which produced the regulation.

This controversy has proceeded for thirty years, and the record shows careful consideration by the FWS of a wealth of scientific studies and of the arguments made by hunters who support and oppose current baiting practices. The court finds no reason not to allow the federal government to proceed with the enforcement of anti-baiting regulations in the same fashion that they are enforced across the country. *Delahoussaye* at 913.

IT IS SO ORDERED.