W. EUGENE DAVIS, Circuit Judge:
Eleven of the twelve appellants were convicted of hunting over a baited field in violation of 16 U.S.C. §§ 703 and 707(a) and 50 C.F.R. § 20.21®. Jack Bass was convicted of aiding and abetting his co-defendants in hunting over a baited field. For the reasons assigned, we affirm all convictions.
I.
On September 20, 1997, the opening day of that year’s dove hunting season, a dove hunt was held on property leased by defendant Jack Bass in Pike County, Mississippi. After purchasing the requisite hunting licenses, the defendants and others met near the leased property, introduced themselves, and engaged in idle conversation for about an hour and a half. During the afternoon, most of the hunters entered the leased acreage from the side near the road where they had parked their vehicles. Several of the men noticed a substantial amount of wheat seed scattered on the freshly harrowed land and promptly asked Bass whether it was legal to hunt over the wheat seed. Bass assured them that the wheat had been distributed strictly according to accepted agricultural practices and was legal.[1]
The leased property consisted of 50 acres near the Bogue Chitto River and had been leased by Bass for the purpose of growing vegetables. The western border of the property is in a straight line measuring approximately 690 yards. The southern border, also in a straight fine, is approximately 430 yards and intersects the western border at a right angle. The eastern border extends northward for approximately 450 yards before a wooded area cuts into what would otherwise be a nearly perfect rectangle. The tree fine extends to the West approximately 140 yards, forming what frequently was described at trial as the “peninsula,” before sloping northwest to meet the north border.
On the afternoon of the hunt, Wildlife Conservation Officers Lane Ball, Jimmy *287 Hutson, and Don Foreman of the Mississippi Department of Wildlife, Fisheries, and Parks were patrolling in the area. The sound of gunshots drew them to the acreage leased by Bass. They watched the hunters from a wooded area for about 15 minutes and then entered the field from the west and began to check licenses. Ball walked toward the northeast corner, Hut-son walked south, and Foreman went to the center of the field. The officers determined that each of the hunters had the appropriate license and that all guns were properly “plugged.”[2]
While walking across the field Foreman noticed some corn chops[3] near the center of the field. Upon further inspection, the officers found four areas in which corn chops had been scattered. Each of the three largest areas had a diameter of approximately 20 to 30 yards, with chopped corn in a “V” or “U-shaped” pattern. The officers did not testify as to the size of the smaller area. The officers also found a small label from a “Performa Brand Feeds” bag of corn chops.
The officers testified that when they entered the field four of the hunters were within 20 or 30 yards from one of the areas where the corn was located,[4] three hunters were within 50 yards of the corn,[5] and the others were between 75 and 200 yards. The officers testified that they could see the corn chops from a distance of 30 yards.
All of the 23 hunters were charged, 22 with hunting over a baited field and Jack Bass with aiding and abetting that hunting. Eleven pled guilty; twelve, including Bass, pled not guilty and were tried before a magistrate judge.
The government produced the testimony of Lee Wilson and Charles Travis, employees of the Natural Resources Conservation Service, an agency of the U.S. Department of Agriculture. Wilson and Travis had, at Bass’ request, conducted surveys of the tract four days before the hunt. Both Wilson and Travis saw corn chops in the field. Travis testified that there was “a long shot possibility” that a person in the vicinity of the corn would not have seen it. Neither Wilson nor Travis noticed the corn until they were standing directly over it.
Each defendant testified that he did not see any corn in the field, stating unequivocally that if he had seen any illegal bait his participation in the hunt would have ended immediately. Several hunters testified that they looked at the ground while walking to their hunting stations. However, each of the hunters also stated that they did not deliberately seek to ascertain if the field was illegally baited.
The magistrate judge found that the wheat seed operation was performed in accordance with normal agricultural practice and did not constitute bait under the statute. He found, however, that the cracked corn constituted illegal bait. The magistrate judge discussed the requisite standard of knowledge as set forth in United States v. Delahoussaye, 573 F.2d 910 (5th Cir.1978), and applying that standard, held that:
The ruling of the Court is that even in light of Delahousay, [sic] and even given the fact that the Fifth Circuit departs from the strict liability standard applied in all other Circuits of the United States in the Delahousey [sic] case, there is still a requirement in the Fifth Circuit that a hunter hunting over a field, and I say even a large field, make a reasonable inspection of the field to try to see *288 if it is a legally planted field, which was not done in this instance.
So, in summary, the finding of the Court is that each of the defendants is guilty as charged in the bill of information because of the corn chops and the finding of the Court that the corn chops would have been reasonably ascertainable with a reasonable and diligent inspection of the field by the hunters, which I think is the only reasonable interpretation given to Delahousey [sic].
The convictions were affirmed on appeal to the district court. This timely appeal followed.
II.
We review the defendants’ convictions for sufficiency of the evidence. United States v. Adams, 174 F.3d 571, 578 (5th Cir.1999); United States v. Sylvester, 848 F.2d 520, 522 (5th Cir.1988). Under this standard of review we will affirm the magistrate’s findings if they are supported by substantial evidence. Adams, 174 F.3d at 578. To reverse the defendants’ convictions, this Court must conclude that no rational trier of fact could find substantial evidence establishing the defendants’ guilt beyond a reasonable doubt. Id. This Court considers the evidence in the light most favorable to the verdict, deferring to the reasonable inferences of fact drawn by the trial court. United States v. Cardenas, 9 F.3d 1139, 1156 (5th Cir.1993).
At the time these events occurred, the regulations promulgated under the Migratory Bird Treaty Act prohibited the taking of migratory game birds:
[b]y the aid of baiting, or on or over any baited area. As used in this paragraph, “baiting” shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and “baited area” means any area where shelled, shucked, or unshucked corn, wheat, or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered ....
50 C.F.R. 20.21(i)(1996).
In Delahoussaye, this Court held that, in order for a hunter to violate the federal prohibition on the use of bait, “[at] a minimum the bait ... must have been so situated that [its] presence could reasonably have been ascertained by a hunter properly wishing to check the area of his activity for illegal devices.” 573 F.2d at 912. This Court rejected a strict liability rule, explaining that such an interpretation “would simply render criminal conviction an unavoidable occasional consequence of duck hunting and deny the sport to those such as, say, judges who might find such a consequence unacceptable.” Id. at 912-13. On the other hand, the Court noted that “to require a higher form of scienter— actual guilty knowledge — would render the regulations very hard to enforce and would remove all incentive for the hunter to clear the area, a precaution which can reasonably be required.” Id. at 913.
In the instant case, the magistrate judge, ruling from the bench, stated that:
[t]he two things that are most damaging to the defendants in this case, ... insofar as the evidence, is (1) the tag from the bag. Somebody obviously went out there with commercially prepared corn chops in that bag, tagged as corn chops, and threw it out for the purpose of baiting doves on this field. The second thing that is the most damaging of all ... is the testimony of the two witnesses who went out there to do the survey .... Both of these witnesses, independently, and in widely disparate locations, noticed corn chops on the ground and they weren’t looking for corn chops.
The Magistrate Judge also found that “the corn chops were readily ascertainable *289 and findable and observable by someone with reasonable diligence.” He farther emphasized that:
every single one of these defendants admitted on the stand that they made no effort whatsoever to walk around this field and check it out for illegal baiting, but that they all primarily relied on two things — (1) their casual traverse of the field in an effort to find a good place to hunt, and (2) the representations of Judge Bass that he had cultivated the field in accordance with the Federal regulations.
Appellants argue that they saw no grain from their hunting positions or as they walked or rode to these positions. Accordingly, Appellants contend that substantial evidence does not support their convictions. However, Appellants ignore our precedent which requires hunters to make a reasonable inspection of the area to be hunted. Delahoussaye, 573 F.2d at 912-913; United States v. Sylvester, 848 F.2d 520, 523 (5th Cir.1988)(affirming the district court’s holding that “with little effort, they [guest hunters] could have made a zigzag inspection and discovered the presence of the wheat ...” because under Delahoussaye hunters must make some effort to determine if the field is baited).
The trial judge — who heard the witnesses — is in a much better position than we to evaluate whether the hunters conducted a reasonable inspection of the field. Except in extraordinary circumstances factual findings such as this must be left in the factfinder’s hands. Consistent with Delahoussaye’s reasoning, we reiterate that the migratory game laws outlawing hunting over a baited field would have no force if a hunter could be automatically exonerated if he did not see the bait. 573 F.2d at 913.
We conclude that, when viewed in the light most favorable to the verdict, the convictions are based on substantial evidence. The conservation officers found four large areas covered with corn chops near the middle of the hunted portion of the field. They also found a tag from a bag of corn chops in the area where the corn chops were scattered. Several days before the hunt, USDA agents, who were not looking for illegal bait, saw the corn chops. One of the areas covered with corn chops was located 20-30 yards directly in front of one of the hunting parties. The conservation officers testified that the corn chops were visible from 20-30 yards. The evidence revealed that the hunt occurred in the afternoon during daylight hours and that the hunters were not prevented from walking in the 50 acre field by inclement weather or for any other reason. In sum, substantial evidence supports the magistrate’s finding that a reasonable inspection of the field would have disclosed the illegal bait.[6]
In addition to the hunters who were convicted of hunting over a baited field, Jack Bass was charged and convicted of aiding and abetting his co-defendants in hunting over a baited field. We conclude that there was sufficient evidence to support that conviction based on the evidence that Bass arranged the hunt, invited the hunters, assisted the hunters during the hunt, and was either aware of the presence of the bait or could have discovered it had he made a reasonable inspection.
III.
For the reasons stated above, all convictions are AFFIRMED.

. The regulation prohibiting the taking of migratory game birds over a baited area then provided an exception for birds, except waterfowl, taken:
on or over lands where shelled, shucked or unshucked corn, wheat, or other grain, salt, or other feed has been distributed or scattered as the result of bona fide agricultural operations or procedures ....
50 C.F.R. § 20.21(i)(2) (1996).

. Permitting a maximum of three shells when fully loaded in chambers and magazines.

. Corn chops are broken pieces of corn that are suitable only for feeding animals.

. The four hunters were Lee, Hahn, Russo, and Slaton. Lee had changed his hunting position and had ridden a four-wheeler to the new position shortly before the officers arrived.

.The three hunters were Jeff Barnes, Michael Blackwell, and Dwight Blackwell.

. We also reject appellants’ argument that the evidence failed to establish that the small amount of com — in relation to the relatively large amount of legally planted wheat — would have attracted the doves. The statute does not require that the bait successfully attract birds to the field. The statute only requires proof of hunting over grain or other feed capable of luring birds into the field where the grain was placed. 50 C.F.R. 20.21(9(1996).