**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 00-31437
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID S. MORGAN,

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Louisiana

October 31, 2002

Before JONES, EMILIO M. GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The opinion of the court issued on February 15, 2002, 283 F.3d 322, is withdrawn and the

following is substituted.

David S. Morgan appeals his conviction for possessing migratory game birds exceeding the

daily bag limit in violation of the Migratory Bird Treaty Act (MBTA), 16 U.S.C. § 703 (2000) and

1

its attendant regulations. Morgan argues that his conviction should be reversed because the misdemeanor with which he was charged is not a strict liability offense and that he did not intend to commit the crime. Morgan alternatively requests reversal of his conviction on the ground that his unlawful conduct was justified.

## I

Morgan and six other individuals were hunting in the vicinity of Sawdust Pond in Plaquemines Parish. Morgan, accompanied by his dog, hunted in a pirogue approximately two hundred yards away from the rest of his party. Morgan was picking up his decoys and returning to the main boat when Agent Gary Pierce of the Louisiana Department of Wildlife and Fisheries pulled alongside. Agent Pierce discovered eight ducks in Morgan's pirogue, which exceeded the daily bag limit by two. Morgan told Agent Pierce that not all of the birds belonged to him and that his dog had picked up birds that had drifted from the other hunters.

At trial, Morgan testified that he shot only two ducks, but that his dog retrieved an additional six ducks that two other hunters had shot. The two hunters corroborated Morgan's testimony. Morgan admitted that he knew that he was in possession of birds in excess of the legal limit, but he defended his conduct by explaining that his dog retrieved birds shot by other hunters because it was poorly trained. Morgan stated that he accepted the other hunters' birds in order to keep his dog from developing the additional bad habit of eating the birds that it retrieved. He explained that he failed to return the birds to the other hunters immediately because he was wet and cold and he wanted to get back to the main boat before becoming ill. Finally, Morgan argued that his conduct was justified

2

because he believed that refusal to accept the birds would constitute "wanton waste" in violation of another MBTA regulation.

After the bench trial, the district court concluded that the uncontroverted evidence showed that Morgan possessed more ducks than the daily limit imposed under 16 U.S.C. § 703. The court concluded that Congress intended to impose strict liability for misdemeanor violations under § 703, including exceeding daily possession limits. The court sentenced Morgan to three years of probation and assessed a $1,000 fine. Morgan now appeals.

## II

On review of a district court's finding of guilt after a bench trial, this court determines whether the district court's conclusion is supported by "any substantial evidence." *United States v. Ceballos-Torres*, 218 F.3d 409, 411 (5th Cir. 2000), *amended by* 226 F.3d 651 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 839 (2001). "Evidence is sufficient to support a conviction if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *Id.* at 411. We examine the evidence as a whole, construing it in the light most favorable to the government. *Id.* We review the district court's legal conclusions, however, de novo. *United States v. Jones*, 172 F.3d 381, 383 (5th Cir. 1999).

Section 703 makes it unlawful "at any time, by any means or in any manner, . . . to take . . . [or] possess" any "migratory bird" in violation of regulations applicable under the MBTA. 16 U.S.C. § 703. Morgan was convicted of violating the regulations that set forth daily field possession limits.[1]

---

[1]Section 20.35 of the regulations reads:
No person shall possess, have in custody, or transport more than the daily bag limit or aggregate daily bag limit, whichever applies, of migratory game birds, tagged or

Morgan concedes that he was in possession of ducks in excess of the daily bag limit. He argues instead that he did not have the requisite intent for a violation of the MBTA because he did not intend to violate the daily bag limit. Although neither § 703 of the MBTA nor its possession regulations explicitly state an intent element, Morgan argues that our precedent interpreting the MBTA requires us to infer one.

The issue of whether a strict liability standard governs violations of daily field possession limits is an issue of first impression for the Fifth Circuit.[2] Our prior cases interpreting offenses under the MBTA have mainly concerned "baited field" offenses, i.e., violations of regulations prohibiting hunting over any area in which grain or other feed has been placed as a lure for migratory birds. *See* 50 C.F.R. § 20.21(i)(1) & (2) (2002). In those cases, we rejected a strict liability interpretation in contrast to the holdings of other circuits.[3] *See United States v. Lee*, 217 F.3d 284, 289 (5th Cir. 2000); *United States v. Adams*, 174 F.3d 571, 576 (5th Cir. 1999); *United States v. Sylvester*, 848 F.2d 520, 522 (5th Cir. 1988); *United States v. Delahoussaye*, 573 F.2d 910, 912 (5th Cir. 1978).

---

not tagged, at or between the place where taken and either (a) his automobile or principle means of land transportation; or (b) his personal abode or temporary or transient place of lodging; or (c) a migratory bird preservation facility; or (d) a post office; or (e) a common carrier facility.
50 C.F.R. § 20.35 (2002).

[2]We reviewed on direct appeal a conviction under § 703 for possession of migratory birds over the daily limit in *United States v. Coates*, 573 F.2d 257 (5th Cir. 1978). We affirmed the conviction, stating that the evidence, including an incriminating admission made by the defendant at the time he was discovered with the ducks, was sufficient to support the magistrate judge's finding of guilt. We did not, however, identify the elements of a possession offense, or reach the issue of whether proof of intent was required to support a conviction.

[3]The majority of circuits applied a strict liability standard to baited field offenses prior to the addition of an intent requirement by Congress, stating generally that all misdemeanors under the MBTA were strict liability crimes.

We reasoned that by imposing strict liability for baited field offenses, hunters, who had no reason to suspect that they were hunting near a baited field, could be convicted of an offense. In *Delahoussaye*, we explained:

> If the hunter cannot tell which is the means next door that is pulling birds over him, he cannot justly be penalized. Any other interpretation would simply render criminal conviction an unavoidable occasional consequence of duck hunting . . . .

*Delahoussaye*, 573 F.2d at 912-13. Rather than hold hunters criminally liable based on the actions of those baiting the field, we analyzed baited field violations to determine whether the bait had been placed in such a manner that its "'presence could reasonably have been ascertained by a hunter properly wishing to check the area of his activity for illegal devices.'" *Lee*, 217 F.3d at 288 (quoting *Delahoussaye*, 573 F.2d at 912). Congress later amended the MBTA to require proof that a hunter knew or reasonably should have known that he was hunting over a baited area. *See* 16 U.S.C. § 704(b)(1) (2000).

Morgan relies on our baited field cases for the more general proposition that all misdemeanors under § 703 of the MBTA require proof of intent. The reasoning of our baited field cases, however, does not extend this far. Baited field offenses present a unique risk that unsuspecting hunters will be held responsible for the unlawful conduct of others, namely, the actual baiting. *Delahoussaye*, 573 F.2d at 912. That is not the case with possession offenses; the hunter who possesses more birds than the law allows does so instead as a result of his own initiative. Moreover, it is not clear how our baited field cases would help Morgan in light of the fact that he admitted knowing he was in possession of more ducks than permitted by MBTA regulation. Even our baited field cases do not require the "guilty knowledge" suggested by Morgan. *Id.* at 913 ("[T]o require a higher form of

5

scienter—actually guilty knowledge—would render the regulations very hard to enforce and would remove all incentive for the hunter to clear the area, a precaution which can reasonably be required.").

Outside the context of baited field offenses, other circuits have construed misdemeanor possession offenses under § 703 to be strict liability offenses. In *United States v. Corrow*, the defendant was co nvicted for possessing eagle feathers in violation of § 703's prohibition against possessing any part of a migratory bird. 119 F.3d 796, 798 (10th Cir. 1997). The Tenth Circuit concluded that misdemeanor offenses under § 703 are strict liability crimes, which do not require a showing of specific intent or guilty knowledge. *See id.* at 805-06. Similarly, in *United States v. Smith*, the defendant received eagle feathers in the mail. Although the evidence in that case supported a finding that defendant knowingly possessed the feathers, the Seventh Circuit noted that there was "no scienter element expressly written into the statute," and t hat several courts had held the strict liability provision to comport with the requirements of due process. 29 F.3d 270, 273 (7th Cir. 1994). In *Rogers v. United States*, the Eighth Circuit affirmed a conviction for possession of wild ducks and wild geese in excess of the prescribed limit. 367 F.2d 998, 1001 (8th Cir. 1966) ("It has long been held that under the Migratory Bird Treaty Act, 16 U.S.C.A. §§ 703-711, it is not necessary that the government prove that a defendant violated its provisions with guilty knowledge or specific intent to commit the violation.").[4]

---

[4]Circuit courts have also declined to infer a general intent requirement for "taking" more than the daily bag limit of migratory birds. *See United States v. Lyon*, 949 F.2d 240, 241-43 (8th Cir. 1991) (upholding convictions for aiding and abetting in the exceeding of the daily bag limit, where individual hunters denied killing in excess of the legal limit, but admitted knowing that the group had); *United States v. Chew*, 540 F.2d 759, 761-62 (4th Cir. 1976) (affirming defendant's conviction for "taking" more than the daily bag limit when defendant shot and killed more than the limit, but contended that he believed according to universal hunters custom that only the birds he retrieved would be counted toward the limit).

6

Congress has also consistently referred to misdemeanor violations under the MBTA as strict liability offenses. When amending the MBTA to add scienter requirements for felony offenses in 1986, Congress was careful to note that "[n]othing in this amendment is intended to alter the 'strict liability' standard for misdemeanor prosecutions under 16 U.S.C. § 707(a), a standard which has been upheld in many Federal court decisions." S. Rep. No. 99-445, at 16 (1986). Congress made a similar comment when adding an intent requirement for baited field offenses in 1998. *See* S. Rep. No. 105-366, at 2 (1998) ("The elimination of strict liability, however, applies only to hunting with bait or over baited areas, and is not intended in any way to reflect upon the general application of strict liability under the MBTA [for misdemeanor offenses]."). Although we do not accord great weight to "the views of one Congress as to the meaning of an Act passed by an earlier Congress," *see, e.g., United States v. Clark*, 445 U.S. 23, 33 n.9 (1980), we take these statements as yet another indication that misdemeanor offenses under § 703 of the MBTA have generally been considered st rict liability offenses.

Finally, we note that the regulatory nature of daily possession limits and the penalty attached to misdemeanor offenses under the MBTA are both consistent with a strict liability standard.[5]   In light of the above case law, the express intent of Congress, and the nature of the violation, we hold that possessing migratory game birds exceeding the daily bag limit in violation of the MBTA and its attendant regulations is a strict liability offense.[6] Because there is no question that Morgan was found

---

[5]A person guilty of a § 703 misdemeanor "shall be fined not more than $15,000 or be imprisoned not more than six months, or both." 16 U.S.C. § 707(a).

[6]Morgan cites *United States v. Clucas*, 50 F. Supp. 609 (E.D. Va. 1943), as an example of a court allowing defendants to explain the reasons for possessing more ducks than the daily bag

in possession of a number of ducks greater than the daily bag limit, the evidence presented at Morgan's bench trial was sufficient to support his conviction.

## III

Alternatively, Morgan argues that his conduct was justified because he had no legal alternative to violating the law. Specifically, he argues that his conduct was justified because he thought that if he left the other hunters' birds in the water, he would be committing "wanton waste" in violation of 50 C.F.R. § 20.25 ("No person shall kill or cripple any migratory game bird pursuant to this part without making a reasonable effort to retrieve the bird . . . ."). In fact, as Morgan concedes, the regulation concerning wanton waste does not apply to an individual who leaves a bird he did not shoot. As a result, Morgan fails to satisfy one of the elements of a justification defense. *See United States v. Harper*, 802 F.2d 115, 117 (5th Cir. 1986) (requiring that defendant have "no reasonable, legal alternative to violating the law" for a justification defense (quoting *United States v. Gant*, 691 F.2d 1159, 1162-63 (5th Cir. 1982)).[7]

## IV

In sum, we hold that possessing migratory game birds exceeding the daily bag limit in violation of the MBTA and its attendant regulations is a strict liability offense. Dr. Morgan did not base his defense or appeal on the meaning of "possession" under § 703. Thus, our opinion does not

limit under the MBTA. Morgan, however, misstates the facts of *Clucas*. At issue in *Clucas* was whether defendants *took* more ducks in one day than permitted by MBTA regulations, and not whether their possession of a certain number of ducks violated the daily bag limit. As a result, *Clucas* did not reach the issue of the intent required for a possession violation.

[7]Morgan contends that the district court failed to consider his justification defense after holding that a strict liability standard applied. Even if this were the case, Morgan does not present a viable justification defense.

address whether some types of possession of migratory birds might be insufficient for § 703 liability. We limit our review to the issues and facts presented in this case. Because there is no question that Morgan was in possession of a number of ducks in excess of the daily bag limit, and because he has failed to satisfy the requirements for a justification defense, his conviction is AFFIRMED.